## IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## IN AND FOR PINELLAS COUNTY, STATE OF FLORIDA
## CIVIL DIVISION

CRISANTO C. OXONIAN, as Personal
Representative of the ESTATE OF
MARIA I. OXONIAN, Deceased,
CRISTANO C. OXONIAN,
individually, CRISTIAN OXONIAN,
and KRISTEN OXONIAN,

       Plaintiffs,

vs.

GEICO GENERAL INSURANCE
COMPANY,

       Defendant.

_____/

CASE NO.:  24-002027-CI

## S U M M O N S

THE STATE OF FLORIDA
TO EACH SHERIFF OF THE STATE:

      YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this
action on the Defendant, *whose name and address is*:

GEICO GENERAL INSURANCE COMPANY
C/O CHIEF FINANCIAL OFFICER
200 E. GAINES ST
TALLAHASSEE, FL 32399-0000

      Each defendant is required to serve written defenses to the complaint or petition on Plaintiff
counsel, *whose name and address is*:

Lee D. Gunn, IV, Esquire
GUNN LAW GROUP, P.A.
401 East Jackson Street, Suite 3600
Tampa, Florida 33602

within 20 days after service of this summons on that defendant, exclusive of the day of service, and
to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's

attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

DATED on <u>05/09/2024 02:49:34 PM</u>_____, _____.



**KEN BURKE, CLERK CIRCUIT COURT**
**315 Court Street**
**Clearwater, Pinellas County, FL 33756-5165**

By_Thomas Smith_____
        Deputy Clerk



*IN ACCORDANCE WITH THE AMERICANS WITH DISABILITIES ACT, IF YOU ARE A PERSON WITH A DISABILITY WHO NEEDS ANY ACCOMMODATION IN ORDER TO PARTICIPATE IN THIS PROCEEDING, YOU ARE ENTITLED, AT NO COST TO YOU, TO THE PROVISION OF CERTAIN ASSISTANCE.   PLEASE CONTACT THE ADA COORDINATOR, HILLSBOROUGH COUNTY COURTHOUSE, 800 E. TWIGGS ST., ROOM 604, TAMPA, FLORIDA 33602, (813) 272-7040, AT LEAST 7 DAYS BEFORE YOUR SCHEDULED COURT APPEARANCE, OR IMMEDIATELY UPON RECEIVING THIS NOTIFICATION IF THE TIME BEFORE THE SCHEDULED APPEARANCE IS LESS THAN 7 DAYS; IF YOU ARE HEARING OR VOICE IMPAIRED, CALL 711.*

## IMPORTANT

A LAWSUIT HAS BEEN FILED AGAINST YOU. YOU HAVE 20 CALENDAR DAYS AFTER THIS SUMMONS IS SERVED ON YOU TO FILE A WRITTEN RESPONSE TO THE ATTACHED COMPLAINT IN THIS COURT. A PHONE CALL WILL NOT PROTECT YOU; YOUR WRITTEN RESPONSE, INCLUDING THE ABOVE CASE NUMBER AND NAMED PARTIES, MUST BE FILED ON TIME, YOU MAY LOSE THE CASE, AND YOUR WAGES, MONEY, AND PROPERTY MAY THEREAFTER BE TAKEN WITHOUT FURTHER WARNING FROM THE COURT. THERE ARE OTHER LEGAL REQUIREMENTS. YOU MAY WANT TO CALL AN ATTORNEY RIGHT AWAY. IF YOU DO NOT KNOW AN ATTORNEY, YOU MAY CALL AN ATTORNEY REFERRAL SERVICE OR A LEGAL AID OFFICE (LISTED IN THE PHONE BOOK).

IF YOU CHOOSE TO FILE A WRITTEN RESPONSE YOURSELF, AT THE SAME TIME YOU FILE YOUR WRITTEN RESPONSE TO THE COURT YOU MUST ALSO MAIL OR TAKE A CARBON COPY OR PHOTOCOPY OF YOUR WRITTEN RESPONSE TO THE "PLAINTIFF/PLAINTIFF'S ATTORNEY" NAMED BELOW.

## IMPORTANTE

USTED HA SIDO DEMANDADO LEGALMENTE. TIENE VEINTE (20) DIAS, CONTADOS A PARTIR DEL RECIBO DE ESTA NOTIFICACION, PARA CONTESTAR LA DEMANDA ADJUNTA, POR ESCRITO, Y PRESENTARLA ANTE ESTE TRIBUNAL. UNA LLAMADA TELEFONICA NO LO PROTEGERA; SI USTED DESEA QUE EL TRIBUNAL CONSIDERE SU DEFENSA, DEBE PRESENTAR SU RESPUESTA POR ESCRITO, INCLUYENDO EL NUMERO DEL CASO Y LOS NOMBRES DE LAS PARTES, INTERESADAS EN DICHO CASO. SI USTED NO CONTESTA LA DEMANDA A TIEMPO, PUDIESE PERDER EL CASO Y PODRIA SER DESPOJADO DE SUS INGRESOS Y PROPIEDADES, O PRIVADO DE SUS DERECHOS, SIN PREVIO AVISO DEL TRIBUNAL. EXISTEN OTROS REQUISITOS LEGALES. SI LO DESEA, PUEDE USTED CONSULTAR A UN ABOGADO IMMEDIATAMENTE. SI NO CONOCE A UN ABOGADO, PUEDE LLAMAR A UNA DE LAS OFICINAS DE ASISTENCIA LEGAL QUE APARENCEN EN LA GUIA TELEFONICA.

SI DESEA RESPONDER A LA DEMANDA POR SU CUENTA, AL MISMO TIEMPO EN QUE PRESENTA SU RESPUESTA ANTE EL TRIBUNAL, DEBERA USTED ENVIAR POR CORREO O ENTREGAR UNA COPIA DE SU RESPUESTA A LA PERSONA DENOMINADA ABAJO COMO "PLAINTIFF/PLAINTIFF'S ATTORNEY." (DEMANDATE O ABOGADO DEL DEMANADANTE).

## IMPORTANT

DES POURSUITES JUDICIARIES ONT ETE ENTREPRISES CONTRE VOUS. VOUS AVEZ 20 JOURS CONSECUTIFS A PARTIR DE LA DATE DE L'ASSIGNATION DE CETTE CITATION POUR DEPOSER UNE REPONSE ECRITE A LA PLAINTE CI-JOINTE AUPRES DE CE TRIBUNAL. UN SIMPLE COUP DE TELEPHONE EST INSUFFISANT POUR VOUS PROTEGER; VOUS ETES OBLIGE DE DEPOSER VOTRE REPONSE ECRITE, AVEC MENTION DU NUMERO DE DOSSIER CI-DESSUS ET DU NOM DES PARTIES NOMMEES ICI, SI VOUS SOUHAITEZ QUE LE TRIBUNAL ENTENDE VOTRE CAUSE. SI VOUS NE DEPOSEZ PAS VOTRE REPONSE ECRITE DANS LE RELAI REQUIS, VOUS RISQUEZ DE PERDRE LA CAUSE AINSI QUE VOTRE SALAIRE, VOTRE ARGENT, ET VOS BIENS PEUVENT ETRE SAISIS PAR LA SUITE, SANS AUCUN PREAVIS ULTERIEUR DU TRIBUNAL. IL Y A D'AUTRES OBLIGATIONS JURIDIQUES ET VOUS POUVEZ REQUERIR LES SERVICES IMMEDIATS D'UN AVOCAT. SI VOUS NE CONNAISSEZ PAS D'AVOCAT, VOUS POURRIEZ TELPHONER A UN SERVICE DE REFERENCE D'AVOCATS OU A UN BUREAU D'ASSISTANCE JURIDIQUE (FIGURANT A L'ANNUAIRE DE TELEPHONES).

SI VOUS CHOISISSEZ DE DEPOSER VOUS-MEME UNE REPONSE ECRITE, IL VOUS FAUDRA EGALEMENT, EN MEME TEMPS QUE CETTE FORMALITE, FAIRE PARVENIR OU EXPEDIER UNE COPIE AU CARBONE OU UNE PHOTOCOPIE DE VOTRE REPONSE ECRITE AU "PLAINTIFF/PLAINTIFF'S ATTORNEY" (PLAIGNANT OU A SON AVOCAT) NOMME CI-DESSOUS.

Lee D. Gunn, IV, Esquire
GUNN LAW GROUP, P.A.
401 East Jackson Street, Suite 3600

Tampa, Florida 33602

## IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## IN AND FOR PINELLAS COUNTY, STATE OF FLORIDA
## CIVIL DIVISION

CRISANTO C. OXONIAN, as Personal
Representative of the ESTATE OF
MARIA I. OXONIAN, Deceased,
CRISTANO C. OXONIAN,
individually, CRISTIAN OXONIAN,
and KRISTEN OXONIAN,

     Plaintiffs,

vs.

GEICO GENERAL INSURANCE
COMPANY,

     Defendant.

_____/

CASE NO.:

DIVISION:

## PLAINTIFFS' COMPLAINT FOR THIRD PARTY BAD FAITH

**PLAINTIFFS,** CRISANTO C. OXONIAN, as Personal Representative of the

ESTATE OF MARIA I. OXONIAN, Deceased, CRISTANO C. OXONIAN,

individually, CRISTIAN OXONIAN, and KRISTEN OXONIAN, ("Oxonians"), sue

DEFENDANT, GOVERNMENT GENERAL INSURANCE COMPANY,

("GEICO"), a foreign corporation, and states as follows:

1.    This is an action for damages exceeding FIFTY THOUSAND ($50,000)

DOLLARS, excluding costs, interest, and attorney's fees.

2.    GEICO is a foreign corporation organized and existing under the laws of

the State of Maryland, is a Florida admitted carrier authorized to and conducting

insurance business in Florida, and at all times material has an agent or representative in Pinellas County, Florida.  The subject claim arose from a covered accident occurring on December 12, 2006, at Oldsmar, Pinellas County, Florida, and the adjustment of the loss was performed in Pinellas County, Florida.

3.     Venue in this Court is proper pursuant to Florida Statute Section 47.051.

4.     Every condition precedent to the bringing of this action has been accomplished or has been waived.

5.     GEICO did issue a policy of insurance to Jessica Lauren Wicky bearing policy number 4038-59-71-85 ("the Policy" or "the GEICO Policy").  The Policy afforded automobile bodily injury coverage with scheduled limits of ten-thousand dollars ($10,000) per person, twenty-thousand dollars ($20,000) per occurrence, being applicable to accidents occurring in, among other states, Florida.  A copy of the Policy and affidavit of authenticity is attached hereto as **Exhibit "A."**

6.     The GEICO Policy was in full force and effect on December 12, 2006.

7.     On or about December 12, 2006, Jessica Wicky operated a motor vehicle with the consent of its owner, William Strickland, on Forest Lakes Boulevard in Oldsmar, Pinellas County, Florida.

8.     At that time and place, Jessica Wicky negligently operated or maintained the motor vehicle so that it collided with the vehicle operated by Maria I. Oxonian.  As a direct and proximate result of this accident Maria I. Oxonian died from her injuries.

9.     GEICO was provided with timely notice of the loss shortly following this accident.  This loss report triggered the bodily injury liability coverage afforded by the

GEICO Policy for the financial protection of Wicky and Strickland.

10.     GEICO undertook the duty of good faith in the handling of the defense and settlement of the wrongful death claim arising from the death of Maria I. Oxonian.  As set forth more specifically below, GEICO breached its duty of good faith owed to its insureds causing a failure of any settlement of the wrongful death claims regarding either, or both, of its insureds, Wicky and Strickland.

11.     In the action styled CRISANTO C. OXONIAN, as Personal Representative of the ESTATE OF MARIA I. OXONIAN, Deceased, v. JESSICA LAUREN WICKY and WILLIAM GILBERT STRICKLAND, Pinellas County Circuit Case No.: 07-009926CI-007, ("Underlying Action"), on April 26, 2023, an amended final judgment in the amount of $1,069,553.48 awarded to the Estate of Maria I. Oxonian; $2,039,16971 awarded to Cristano C. Oxonian; $804,391.88 awarded to Christian Oxonian; and $804,391.88 awarded to Kristen Oxonian against Jessica Lauren Wicky jointly and severally with William Gilbert Strickland.  (Amended Final Judgment Against Jessica Lauren Wicky attached hereto as **Exhibit "B1"** and Final Judgment Against William Gilbert Strickland attached hereto as **Exhibit "B2"**).

12.     A motion of for attorney's fees and costs is pending in the Underlying Action.  (**Exhibit "C"**).

## COUNT I – COMMON LAW BAD FAITH

13.     Oxonians reallege and reassert the allegations of paragraphs 1 through 12 herein.

14.     This is an action for Common Law Insurer Bad Faith.

15.     As the liability insurer for both Wicky and Strickland, GEICO was obligated to attempt to settle on behalf of, defend, and indemnify each of these insureds.  All such conduct was required to conform with the applicable good faith duties imposed by Florida Law.

16.     Accordingly, GEICO was under a duty to promptly perform a reasonable and adequate investigation of the crash and timely evaluate the claims likely to be asserted against Wicky and Strickland and to apprise Wicky and Strickland of the anticipated exposure of the claims.  GEICO was further affirmatively obligated to promptly seek out and determine whether settlement of claims resulting from the crash was possible and to make available funds up to its policy limits for the settlement of all bodily injury claims consistent with a prompt, fair, and reasonable evaluation of the claims.  After a diligent attempt to settle and obtain a release for both insureds, GEICO was required to attempt to settle for only one insured with the exercise of reasoned claim judgment and the standard of care required of the claims' adjusters charged by GEICO to carry out its non-delegable duty of good faith efforts to settle.

17.     GEICO was required to adopt and implement fair claim standards for the prompt adjustment of liability claims arising out of an insured person's accident. These claim practices are required to reflect the fiduciary nature of the act of accepting the exclusive right and duty to settle any claims as set forth by GEICO's Policy. As such, upon notice of a loss, GEICO was required to assign a qualified adjuster to perform the loss adjustment process with the utmost of care, as owed by a fiduciary.

18.     The required proper claims adjustment process would have revealed the severity of MARIA I. OXONIAN's injuries from the covered accident within a reasonable

time after GEICO was put on notice of the accident and that the amount of the legal liability of Wicky and Strickland for the accident clearly exceeded the scheduled limits of the Policy. Under these circumstances, GEICO was obligated to make "proactive" efforts to protect both and/or each insured from the wrongful death claim presented by Cristano Oxonian as the Personal Representative of the Estate of Maria Oxonian.

19.     GEICO breached its fiduciary duties as including, but not limited to, the following:

a.     Failing to timely identify William Gilbert Strickland as an insured;

b.     Failing to timely seek out a settlement for the protection of both Wicky and Strickland;

c.     Failing to timely attempt to settle and protect one insured when it became reasonably clear that a release of both insureds was not possible;

d.     Failing to communicate with its insureds to adequately explain the information necessary to achieve settlement and ways each could minimize any excess liability; and,

e.     Failing to adopt and implement standards and procedures for the timely and proactive investigation and resolutions of claims and/or failure to follow such standards and procedures as GEICO had adopted.

20.     GEICO's breaches of its duty as set forth herein caused the failure to settle the OXONIANS' wrongful death claim.

21.     As a direct result of the violations and breaches herein alleged, Wicky and Strickland are exposed to the excess legal liability set forth by the amended judgment attached as Exhibit "B," as well as any judgment for attorney's fees and costs resulting from the motion attached as Exhibit "C" (the "Judgments").

WHEREFORE Plaintiff demands judgment be entered against GEICO in the unsatisfied amount of the Judgments, costs, and such other relief deemed just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

/s/LEE D. GUNN IV, ESQUIRE
LEE D. GUNN IV, ESQUIRE
Florida Bar No.:  367192
lgunn@gunnlawgroup.com
GUNN LAW GROUP, P.A.
400 North Ashley Drive, Suite 2050
Tampa, FL 33602
(813) 228-7070 TELEPHONE
(813) 228-9400 FACSIMILE
Counsel for Plaintiff



■ Government Employees Insurance Company
■ GEICO General Insurance Company
■ GEICO Indemnity Company
■ GEICO Casualty Company

APR 2 0 2007

P.O. Box 33040 ■ Lakeland, FL 33807-3040

April17, 2007

The Law Offices of Perenich & Carroll
1875 North Belcher Rd. suite 201
Clearwater, Fl 33765

RE: Claim # :0279955400101019/J737
   Insured: Jessica Wicky
   D/L: 12/12/06
   Claimants: Maria Oxonian, deceased

Dear Sir:

Enclosed please find the following information for your assistance in handling this case.

___ Transcribed recorded statement of :

___ Affidavit of Coverage for the coverage in effect on the above date of loss.

___ M-9 Uninsured motorist selection form in effect for the above date of loss, indicating that
   Uninsured/Underinsured Motorist coverage was rejected by the policyholder.

XX A Certified copy of the policy for this insured in force on the date of loss, is attached.

___ PIP Pay out Sheets for

Feel free to contact me at the telephone number listed below, should you have any questions or
need additional information from us.

Sincerely,

Sharon E. Stiles
C U Claim Examiner
1-800-648-2493 x 4453

SES/s
Encl.

EXHIBIT "A" TO PLAINTIFFS' COMPLAINT FOR THIRD PARTY BAD FAITH
FILED 5/8/2024

# GEICO

**TEL: 1-800-841-3000**

U-31-DP  (4)

**geico.com**

GEICO GENERAL INSURANCE COMPANY
ONE GEICO PLAZA, WASHINGTON, DC 20076-0001

**Policy Number: 4038-59-71-85**

---

### FAMILY AUTOMOBILE POLICY RENEWAL DECLARATIONS

This is a description of your coverage. Please keep for your records.



Item 1: Named Insured and Address

JESSICA LAUREN WICKY
4163 MALLARD DR
SAFETY HARBOR FL  34695

E-Mail Address: Billstri@tampabay.rr.com

| Date Issued: **09-18-06** | | |
|---|---|---|
| Policy Period From   11-11-06 | to  05-11-07 | 12:01 a.m. Local time at the address of the named insured. |

The insured vehicle(s) will be regularly garaged in the town and state shown in Item 1, except as noted in the Vehicle Segment.

**Contract Type:**  A30FL

CONTRACT AMENDMENTS:      ALL VEHICLES - A200FL A30FL A54FL

UNIT ENDORSEMENTS:       A239 (VEH 1); UE316 (VEH 1)

## IMPORTANT MESSAGES

-Please review the reverse side of this page for coverage and discount information.

-Active Duty, Guard, Reserve or Retired Military: Call 1-800-MILITARY to see if you qualify for the Military Discount.

-Reminder - Physical damage coverage will not cover loss for custom options on an owned auto, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. Please call us at 1-800-841-3000 if you have any questions or wish to purchase additional coverage for customized equipment not included above.

-Confirmation of coverage has been sent to your lienholder and/or additional insured.

Countersigned by Authorized Representative



INSURED COPY

**PAGE 1** TURN OVER

# CERTIFIED COVER SHEET

CLAIM NUMBER: 027995540 0101 019      **DOL: 12/12/06**
ADJUSTER:      J737L

POLICYHOLDER: WICKY
POLICY NUMBER: **4038-59-71-85**

---

**DATE ISSUED:**    09/18/06
**PROCESS DATE:**   09/17/06               **EFFECTIVE DATE: 11/11/06**
**POLICY TERM:**    11/11/06 TO 05/11/07
**RENEWAL**                               NO DASH/RELATED POLICIES

---

**GG**
A30FL (2/98) EFF 7/6/98

---

A200FL (12/02)

A54FL (8/00) EFF 11/13/00

---

A239 (7/88)

UE316LH (4/85)

NOTES:

S. Dudley

A F F I D A V I T

I, S. Dudley, Claims Coverage Underwriter of Geico General Insurance Company a corporation organized and existing under the laws of the state of Maryland, do hereby certify that the attached Policy Declaration sheet was printed from records retained in our computer data files. The specimen amendments, endorsements, and policy contract are standard forms with information particular to this policy. Attached is a copy of the policy contract number 4038-59-71-85 issued 09/18/06 in the name of JESSICA LAUREN WICKY for Renewal processed on 09/17/06 effective 11/11/06, and in effect on 12/12/06, the date of loss.

S. Dudley
Claims Coverage Underwriter

In the State of Florida, County of Polk, the foregoing instrument was subscribed and sworn before me this 4TH day of April , 2007, by S. Dudley who is personally known to me or has produced a driver's license for identification.

Notary Public



HEIDI E. ALLEGATO
MY COMMISSION # DD225172
EXPIRES: June 22, 2007
1-800-3-NOTARY    FL Notary Discount Assoc. Co.

**GEICO**

Policy Number:

# Automobil_ Policy Amendment

## Glass Repair/Replacement

*Your* policy is amended as follows:

**SECTION III - Physical Damage Coverages**

**LIMIT OF LIABILITY**

The following numbered paragraph is added:

**6.**   for glass repair or replacement, is not to exceed the prevailing competitive price. This is the price we can secure from a competent glass repair facility conveniently located to *you* at the time *you* make *your* claim. Although *you* have the right to choose any glass repair facility or location, the limit of liability for *loss* to window glass is the cost to:

   (a)  repair; or
   (b)  replace

such glass but will not exceed the prevailing competitive price. If the glass is replaced, then the cost will be paid at the prevailing competitive price for replacement. At *your* request, we will identify a glass repair facility that will perform the repairs at the prevailing competitive price.

We affirm this amendment.

J. C. Stewart
Secretary       •       GOVERNMENT EMPLOYEES INSURANCE COMPANY       •       President
GEICO GENERAL INSURANCE COMPANY

O. M. Nicely

A-200-FL (12-02)

**SPECIMEN**

DATE OF NOTIFICATION
NOTICE OF COVERAGE - LIENHOLDER - AUTOMOBILE PHYSICAL DAMAGE INSUR... CE

POLICYHOLDER

POLICY NUMBER
POLICY TERM                    TO

U-32 (1-85)

Any claim under the Physical Damage Coverages of the policy will be paid jointly to the *insured* and the Lienholder in the Declarations.

The Lienholder must notify us if he becomes aware of any increased hazard or change of ownership of the auto or he will lose all of his rights under this policy.

If the *insured* fails to file with us a Proof of *Loss* within 91 days after the loss, the Lienholder must do so within the following 60 days. The policy provisions on time of payment, appraisal and the right to sue us applies both to Lienholder and the *insured*. We may settle a claim at our option by separate payment to the *insured* and the Lienholder.

Whenever we pay the Lienholder, we shall be subrogated to the Lienholder's rights of recovery to the extent of the payment. If the policy is in effect as to the Lienholder but has been canceled as to the *insured*, the Lienholder must assign the loan to us if we ask and we pay the full amount due.

We will mail notice to the Lienholder at least 10 days before we cancel his interest in the policy.

UE-316 (4-85)

SPECIMEN



**GEICO**

ONE GEICO PLAZA
Washington, D. C. 20076-0001
Telephone: 1-800-841-3000

# Florida Family Automobile Insurance Policy

- Government Employees Insurance Company
- GEICO Casualty Company
- GEICO General Insurance Company
- GEICO Indemnity Company

SPECIMEN

A-30FL (2-98)

# YOUR POLICY INDEX

Page                                                                                                    Page

**SECTION I - Liability Coverages**
**Your Protection Against Claims From Others**

Definitions ......................................................................... 3
Losses We Will Pay For You ........................................ 3
Additional Payments We Will Make Under
  The Liability Coverages ............................................ 4
    Legal Expenses And Court Costs
    Bail And Appeal Bonds
    First Aid Expenses
Exclusions: When Section I Does Not Apply ............. 4
Persons Insured: Who Is Covered .............................. 4
Financial Responsibility Laws .................................... 5
Limits Of Liability ...................................................... 5
Other Insurance .......................................................... 5
Conditions ................................................................... 5
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Subrogation

**SECTION II - Personal Injury Protection Coverage**

Personal Injury Protection (Part I) ............................. 6
Payments We Will Make .............................................. 6
Exclusions   .................................................................. 6
Limits Of Liability; Application Of Deductible;
  Other Insurance ........................................................ 7
Definitions ................................................................... 7
Policy Period; Territory ............................................... 8
Conditions ................................................................... 8
    Notice
    Action Against The Company
    Proof Of Claim; Medical Reports and
      Examinations; Payment of Claim Withheld
    Reimbursement And Subrogation
    Special Provisions For Rented Or Leased Vehicles
    Arbitration
Modification Of Policy Coverages (Part II) ............... 8
Provisional Premium (Part III) ................................... 9

**SECTION III - Physical Damage Coverages**
**Your Protection For Loss Of Or Damage To Your Car**

Definitions ................................................................... 9
Losses We Will Pay .................................................... 10
    Comprehensive(Excluding Collision) ................. 10
    Collision ............................................................... 10
Additional Payments We Will Make Under The
  Physical Damage Coverages ................................... 10
Car Rental If Your Car Is Stolen ................................ 10

Exclusions:  When The Physical Damage
  Coverages Do Not Apply ........................................ 10
Limit Of Liability ....................................................... 11
Other Insurance ......................................................... 11
Conditions .................................................................. 11
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Insured's Duties In Event Of Loss
    Appraisal
    Payment Of Loss
    No Benefit To Bailee
    Subrogation
**SECTION IV - Uninsured Motorists Coverage**
**Your Protection For Injuries Caused By**
**Uninsured And Hit-And-Run Motorists**

Definitions ................................................................. 12
Losses We Pay ........................................................... 13
Exclusions:  When Section IV Does Not Apply     13
Limits Of Liability ..................................................... 13
Other Insurance ......................................................... 13
Disputes Between Us And An Insured ...................... 13
Trust Agreement ........................................................ 14
Conditions .................................................................. 14
    Notice
    Assistance And Cooperation Of The Insured
    Action Against Us
    Proof Of Claim - Medical Reports
    Payment Of Loss
**SECTION V - General Conditions**
**The Following Apply To All Coverages In This Policy**

Territory - Policy Period ............................................ 15
Premium ..................................................................... 15
Changes ...................................................................... 15
Assignment ................................................................. 15
Cancellation By The Insured ..................................... 15
Cancellation By Us ..................................................... 15
Cancellation By Us Is Limited ................................... 16
Renewal ...................................................................... 16
Mediation Of Claims ................................................. 16
Other Insurance ......................................................... 16
Action Against Us ...................................................... 16
Dividend Provision .................................................... 16
Declarations ............................................................... 16
Fraud And Misrepresentation .................................... 16
Examination Under Oath ........................................... 17
Terms Of Policy Conformed To Statutes ................. 17
**SECTION VI -  Amendments And Endorsements**

Special Endorsement
United States Government Employees ..................... 17

Whenever "he," "his," "him," or "himself" appears in this policy, you may read "she," "her," "hers," or "herself."

## AGREEMENT

We, the Company named in the declarations attached to this policy, make this agreement with *you*, the policyholder. Relying on the information you have furnished and the declarations attached to this policy and if *you* pay *your* premium when due, we will do the following:

## SECTION I - LIABILITY COVERAGES

### Bodily Injury Liability And Property Damage Liability
### *Your* Protection Against Claims From Others

### DEFINITIONS

The words italicized in Section I of this policy are defined below.

**1.** *"Auto business"* means the business of selling, repairing, servicing, storing, transporting or parking of autos.

**2.** *"Bodily injury"* means bodily injury to a person, including resulting sickness, disease or death.

**3.** *"Farm auto"* means a truck type vehicle with a load capacity of 2,000 pounds or less, not used for commercial purposes other than farming.

**4.** *"Insured"* means a person or organization described under PERSONS INSURED.

**5.** *"Non-owned auto"* means a *private passenger*, *farm* or *utility auto* or *trailer* not owned by or furnished for the regular use of either *you* or a *relative*, other than a *temporary substitute auto*. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

**6.** *"Owned auto"* means:

    (a) a vehicle described in this policy for which a premium charge is shown for these coverages;

    (b) a *trailer* owned by *you*;

    (c) a *private passenger*, *farm* or *utility auto*, ownership of which *you* acquire during the policy period, if

        (i) it replaces an *owned auto* as defined in (a) above; or

        (ii) we insure all *private passenger*, *farm* and *utility autos* owned by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later;

    (d) a *temporary substitute auto*.

**7.** *"Private passenger auto"* means a four-wheel private passenger, station wagon or jeep-type auto, including a *farm* or *utility auto* as defined.

**8.** *"Relative"* means a person related to *you* who resides in *your* household, including *your* ward or foster child.

**9.** *"Temporary substitute auto"* means a private passenger, farm or utility auto or *trailer*, not owned by *you*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

**10.** *"Trailer"* means a vehicle designed to be towed by a *private passenger auto*. If the vehicle is being used for business or commercial purposes, it is a *trailer* only while used with a *private passenger*, *farm* or *utility auto*. *Trailer* also means a farm wagon or farm implement used with a *farm auto*.

**11.** *"Utility auto"* means a vehicle, other than a *farm auto*, with a load capacity of 2,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

**12.** *"War"* means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.

**13.** *"You"* means the policyholder named in the declarations and his or her spouse if a resident of the same household.

### LOSSES WE WILL PAY FOR *YOU*

Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:

    1. *bodily injury*, sustained by a person, and
    2. damage to or destruction of property,

arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1. All investigative and legal costs incurred by us.

2. All court costs charged to an **insured** in a covered law suit.

3. All interest accruing on that amount of a judgment which represents our limit of liability, until we have paid, offered or deposited in court that part of the judgment not exceeding the limit of our liability.

4. Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of liability.

5. Premiums for bail bonds paid by an **insured** due to traffic law violations arising out of the use of an insured auto, not to exceed $250 per bail bond.

6. Costs incurred by any **insured** for first aid to others at the time of an accident involving an insured auto.

7. Loss of earnings up to $50 a day, but not other income, if we request an **insured** to attend hearings and trials.

8. All reasonable costs incurred by an **insured** at our request.

## EXCLUSIONS

### When Section I Does Not Apply

1. We do not cover any **bodily injury** to any **insured** or any member of an **insured's** family residing in the **insured's** household.

This exclusion does not apply if the **insured** or member of the **insured's** household is injured as a passenger in a motor vehicle insured under this policy while that vehicle is being driven by a person who is not a **relative**.

2. Section I does not apply to any vehicle used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

3. We do not provide liability coverage for any person who intentionally causes **bodily injury** or property damage.

4. We do not cover **bodily injury** or property damage that is insured under a nuclear liability policy. This exclusion applies even if the limits of that policy are exhausted.

5. **Bodily injury** or property damage arising from the operation of farm machinery is not covered.

6. **Bodily injury** to an employee of an **insured** arising out of and in the course of employment by an **insured** is not covered.

However, **bodily injury** of a domestic employee of the **insured** is covered unless benefits are payable or are required to be provided under a workmen's compensation law.

7. We do not cover **bodily injury** to a fellow employee of an **insured** (other than **you**) injured in the course of his employment if the **bodily injury** arises from the use of an auto in the business of his employer, and if benefits are payable under a workmen's compensation policy.

8. We do not cover an **owned auto** while used by a person (other than **you** or a **relative** or **your** or **your relative's** partner, agent or employee) when he is employed or otherwise engaged in the **auto business**.

9. A **non-owned auto** while maintained or used by a person while he is employed or otherwise engaged in any **auto business** is not covered.

However, coverage does apply to a **non-owned private passenger auto** used by **you**, **your** chauffeur or a domestic servant, while engaged in the business of an **insured**.

10. We do not cover damage to:

    (a) property owned, or transported by an **insured**; or
    (b) property rented to or in charge of an **insured** other than a residence or private garage.

11. We do not cover an auto acquired by **you** during the policy term, if **you** have purchased other liability insurance for it.

12. We do not cover:

    (a) the United States of America or any of its agencies;
    (b) any person, including **you**, if protection is afforded under the provisions of the Federal Tort Claims Act.

## PERSONS INSURED

### Who Is Covered

Section I applies to the following as **insureds** with regard to an **owned auto:**

1. **you;**

2. any other person using the auto with **your** permission. The actual use must be within the scope of that permission;

3. any other person or organization for his or its liability because of acts or omissions of an **insured** under 1. or 2. above.

Section I applies to the following with regard to a *non-owned auto*:

**1.** *you* and *your relatives* when driving the *non-owned auto*. Such use must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission.

**2.** a person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under 1. above.

The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

### FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law.

When the policy applies to the operation of a motor vehicle outside of *your* state, we agree to increase *your* coverages to the extent required of out-of-state motorists by local law. We will not provide Bodily Injury Liability Coverage under this provision if that coverage is not purchased and shown in the policy declarations. This additional coverage will be reduced to the extent that *you* are protected by another insurance policy. No person can be paid more than once for any item of loss.

### LIMITS OF LIABILITY

Regardless of the number of autos or *trailers* to which this policy applies:

**1.** The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one person as the result of one occurrence.

**2.** The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of any one occurrence.

**3.** The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

### OTHER INSURANCE

If the *insured* has other applicable insurance against a loss covered by Section I of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for losses arising out of the ownership, maintenance or use of a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

### CONDITIONS

The following conditions apply to Section I:

**1.** NOTICE

As soon as possible after an occurrence, written notice must be given us or our authorized agent stating:

  (a)  the identity of the *insured*;
  (b)  the time, place and details of the occurrence;
  (c)  the names and addresses of the injured, and of any witnesses; and
  (d)  the names of the owners and the description and location of any damaged property.

If a claim or suit is brought against an *insured*, he must promptly send us each demand, notice, summons or other process received.

**2.** TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

**3.** ASSISTANCE AND COOPERATION OF THE *INSURED*

The *insured* will cooperate and assist us, if requested:

  (a)  in the investigation of the occurrence;
  (b)  in making settlements;
  (c)  in the conduct of suits; and
  (d)  in enforcing any right of contribution or indemnity against any legally responsible person or organization because of *bodily injury* or property damage; and
  (e)  at trials and hearings;
  (f)  in securing and giving evidence; and
  (g)  by obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

**4.** ACTION AGAINST US

No suit will lie against us:

  (a)  unless the *insured* has fully complied with all the policy's terms and conditions, and
  (b)  until the amount of the *insured's* obligation to pay has been finally determined, either:

(i) by a final judgment against the *insured* after actual trial; or

(ii) by written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or of his estate will not relieve us of our obligations.

5. SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

When a person has been paid damages by us under this policy and also recovers from another, that person shall:

(a) hold in trust for us the amount recovered; and

(b) reimburse us to the extent of our payment.

## SECTION II - PERSONAL INJURY PROTECTION COVERAGE AND AUTOMOBILE MEDICAL PAYMENTS

### PART 1 - PERSONAL INJURY PROTECTION

### PAYMENTS WE WILL MAKE

The Company will pay, in accordance with the Florida Motor Vehicle No-Fault Law, as amended, to or for the benefit of the injured person:

(a) 80% of *medical expenses*; and

(b) 60% of *work loss*;

(c) *replacement services expenses*; and

(d) death benefits incurred as a result of *bodily injury*, caused by an accident arising out of the ownership, maintenance or use of a *motor vehicle* and sustained by:

(1) *you* or any *relative* while *occupying* a *motor vehicle* or, while a *pedestrian* through being struck by a *motor vehicle*; or

(2) any other person while *occupying* the *insured motor vehicle* or, while a *pedestrian*, through being struck by the *insured motor vehicle*.

In addition, we will pay, under Automobile Medical Payments coverage (applies only if a premium amount is shown in the Policy Declarations for "Medical Payments" coverage), subject to the coverage limit:

(a) the portion of any claim for Personal Injury Protection medical expense benefits otherwise covered but not payable due to the coinsurance provision of the Personal Injury Protection coverage. This is the 20% of *medical expenses* not covered in (a) of the first paragraph of this section;

(b) any *medical expenses* incurred that exceed the Personal Injury Protection medical expense coverage limit; and

(c) *medical expenses* incurred by an *insured* or *relative* that result from injuries received while *occupying* a *motor vehicle* or as a *pedestrian* in

an accident that occurs outside the state of Florida.

### EXCLUSIONS

This insurance does not apply:

(a) to any *insured* injured while *occupying* any *motor vehicle* owned by that *insured* and which is not an *insured motor vehicle* under this insurance;

(b) to any person while operating the *insured motor vehicle* without *your* express or implied consent;

(c) to any person, if such person's conduct contributed to his *bodily injury* under any of the following circumstances:

(i) causing *bodily injury* to himself intentionally;

(ii) while committing a felony;

(d) to *you* or any *relative* for *work loss* if an entry in the schedule or declarations indicates such coverage does not apply;

(e) to any *pedestrian*, other than *you* or any *relative*, not a legal resident of the State of Florida;

(f) to any person, other than *you*, if such person is the *owner* of a *motor vehicle* with respect to which security is required under the Florida Motor Vehicle No-Fault law, as amended;

(g) to any person, other than *you* or any *relative*, who is entitled to personal injury protection benefits from the *owner* or *owners* of a *motor vehicle* which is not an *insured motor vehicle* under this insurance or from the *owner's* insurer; or

(h) to any person who sustains *bodily injury* while *occupying* a *motor vehicle* located for use as a residence or premises.

**LIMIT OF LIABILITY; APPLICATION OF DEDUCTIBLE; OTHER INSURANCE**

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Motor Vehicle No-Fault Law, as amended, from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains *bodily injury* as the result of any one accident shall be $10,000; provided that payment for death benefits included in the foregoing shall in no event exceed $5,000.

Any amount payable under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workmen's compensation laws of any state or the federal government.

If benefits have been received under the Florida Motor Vehicle No-Fault Law, as amended, from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim.

The amount of any deductible stated in the declarations shall be deducted from the total amount of all sums otherwise payable by us with respect to all loss and expenses incurred by or on behalf of each person to whom the deductible applies and who sustains *bodily injury* as the result of any one accident, and if the total amount of such loss and expense exceeds such deductible, the total limit of benefits we are obligated to pay shall then be the difference between such deductible amount and the applicable limit of our liability. Such deductible will not apply to the death benefit.

If an entry in the declarations so indicates, any amount payable under this insurance to *you* or any *relatives* shall be reduced by any benefits payable by the Federal Government to active or retired military personnel and their dependent relatives. If such benefits are not available at the time of loss, we shall have the right to recompute and charge the appropriate premium.

**DEFINITIONS**

The definitions of the terms *"insured"* and *"you"* under Section I apply to Section II also.

When used in reference to this Section: *"bodily injury"* means bodily injury, sickness, or disease, including death at any time resulting therefrom.

*"Insured motor vehicle"* means a *motor vehicle*:

(a) of which *you* are the *owner*, and

(b) with respect to which security is required to be maintained under the Florida Motor Vehicle No-Fault Law, and

(c) for which a premium is charged, or which is a trailer, other than a mobile home, designed for use with a *motor vehicle*;

*"Medical expenses"* means reasonable expenses for necessary medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services for prosthetic devices and for necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through prayer alone for healing in accordance with his religious beliefs;

*"Motor vehicle"* means any self-propelled vehicle of 4 or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semi-trailer designed for use with such vehicle.

A *motor vehicle* does not include:

(a) any *motor vehicle* which is used in mass transit other than public school transportation and designed to transport more than 5 passengers exclusive of the operator of the *motor vehicle* and which is owned by a municipality, a transit authority, or a political subdivision of the state; or

(b) a mobile home.

*"Occupying"* means in or upon or entering into or alighting from;

*"Owner"* means a person or organization who holds the legal title to a *motor vehicle*, and also includes:

(a) a debtor having the right to possession, in the event a *motor vehicle* is the subject of a security agreement, and

(b) a lessee having the right to possession, in the event of a *motor vehicle* is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more, and

(c) a lessee having the right to possession, in the event a *motor vehicle* is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance;

*"Pedestrian"* means a person while not an occupant of any self-propelled vehicle;

*"Relative"* means a person related to *you* by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as *you*;

*"Replacement services expenses"* means with respect to the period of disability of the injured person all expenses reasonably incurred in obtaining from others

ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his household;

*"Work loss"* means with respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person.

## POLICY PERIOD; TERRITORY

The insurance under this Section applies only to accidents which occur during the policy period:

(a) in the State of Florida;

(b) as respects *you* or a *relative*, while *occupying* the *insured motor vehicle* outside the State of Florida but within the United States of America, its territories or possessions or Canada; and

(c) as respects *pedestrians* injured when struck by the *insured motor vehicle* in the State of Florida, if they are not the *owner* of a vehicle for which coverage is required to be maintained under the Florida No-Fault Law.

(d) Additionally, applicable to the Medical Payments coverage only, if included on the policy, we will cover *you* or any *relative* for injuries incurred while *occupying* a *motor vehicle* within the United States of America, its territories or possessions or Canada.

## CONDITIONS

1. Notice. In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for *bodily injury* against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

2. Action Against the Company. No action shall lie against us unless, as a condition precedent thereto, there shall have been full compliance with all terms of this insurance, nor until 30 days after the required notice of accident and reasonable proof of claim has been filed with us.

3. Proof of Claim; Medical Reports and Examinations; Payment of Claim Withheld. As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable. Such person shall submit to mental or physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to an examina-

tion, we will not be liable for subsequent personal injury protection benefits. Whenever a person making a claim is charged with committing a felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

The *insured* and other persons making claim must submit to examination under oath by any person named by us when and as often as we may reasonably require.

4. Reimbursement and Subrogation. In the event of payment to or for the benefits of any injured person under this insurance;

(a) the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

(b) the Company providing personal injury protection benefits on a private passenger motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the owner or insurer of the owner of a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, if such injured person sustained the injury while *occupying*, or while a *pedestrian* through being struck by, such commercial motor vehicle.

5. Special Provision for Rented or Leased Vehicles. Notwithstanding any provision of this coverage to the contrary, if a person is injured while *occupying*, or through being struck by, a *motor vehicle* rented or leased under a rental or lease agreement which does not specify otherwise in bold type on the face of such agreement, the personal injury protection coverage afforded under the lessor's policy shall be primary.

6. Arbitration. The Company, under this coverage, is entitled to binding arbitration of any claims dispute involving medical benefits arising between us and any person providing medical services or supplies if that person has agreed to accept assignment of personal injury protection benefits. The provisions of Chapter 682 relating to arbitration shall apply. The prevailing party shall be entitled to attorney's fees and costs.

## PART II - MODIFICATION OF POLICY COVERAGES

Any Automobile Medical Payments insurance, any Uninsured Motorists coverage or any excess Underinsured Motorists coverage afforded by the policy shall be excess over any Personal Injury Protection benefits paid or payable or which would be available but for the application of a deductible.

Regardless of whether the full amount of Personal Injury Protection benefits have been exhausted, any Medical Payments insurance afforded by this policy shall pay the portion of any claim for Personal Injury Protection *medical expenses* which are otherwise covered but not payable due to the limitation of 80% of *medical expenses* contained in Section I but shall not be payable for the amount of the deductible selected.

## PART III - PROVISIONAL PREMIUM

It is agreed that in the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law, as amended, providing for the exemption of persons from tort liability, the premium stated in the declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the named insured pursuant to Section 12 (2) (e) of the Florida Motor Vehicle No-Fault Law, as amended, with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium stated in the declarations, the *insured* shall pay to the Company the excess as well as the amount of any return premium previously credited or refunded.

## SECTION III - PHYSICAL DAMAGE COVERAGES
### Your Protection For Loss Or Damage To Your Car

### DEFINITIONS

The definitions of the terms *"auto business," "farm auto," "non-owned auto," "private passenger auto," "relative," "temporary substitute auto," "utility auto," "you,"* and *"war"* under Section I apply to Section III also. Under this Section, the following special definitions apply:

**1.** *"Actual cash value"* is the replacement cost of the auto or property less *depreciation* or *betterment*.

**2.** *"Betterment"* is improvement of the auto or property to a value greater than its pre-loss condition.

**3.** *"Collision"* means *loss* caused by upset of the covered auto or its collision with another object, including an attached vehicle.

**4.** *"Comprehensive"* means *loss* caused other than by *collision* and includes the following causes:

(a) missiles;
(b) falling objects;
(c) fire;
(d) lightning;
(e) theft;
(f) larceny;
(g) explosion;
(h) earthquake;
(i) windstorm;
(j) hail;
(k) water;
(l) flood;
(m) malicious mischief;
(n) vandalism;
(o) riot;
(p) civil commotion; or
(q) colliding with a bird or animal.

**5.** *"Depreciation"* means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes.

**6.** *"Insured"* means:

(a) regarding the *owned auto*:

   (i) *you* and *your relatives;*
   (ii) a person or organization maintaining, using or having custody of the auto with *your* permission, if his use is within the scope of that permission.

(b) regarding a *non-owned auto*:

   *you* and *your relatives*, when driving the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

**7.** *"Loss"* means direct and accidental loss of or damage to:

(a) an insured auto, including its equipment; or
(b) other property insured under this section.

**8.** *"Owned auto"* means:

(a) any vehicle described in this policy for which a specific premium charge indicates there is coverage;
(b) a *private passenger, farm* or *utility auto* or a *trailer*, ownership of which is acquired by *you* during the policy period; if

   (i) it replaces an *owned auto* as described in (a) above, or
   (ii) we insure all *private passenger, farm, utility autos* and *trailers* owned by *you* on the date of such acquisition and *you* request us

to add it to the policy within 30 days afterward;

(c) a *temporary substitute auto.*

**9.** *"Trailer"* means a trailer designed for use with a *private passenger auto* and not used as a home, office, store, display or passenger trailer.

## LOSSES WE PAY

### *Comprehensive* (Excluding *Collision*)

**1.** We will pay for each *loss*, less the applicable deductible, caused other than by *collision* to the *owned* or *non-owned auto*. This includes glass breakage.

No deductible will apply to *loss*:

(a) to windshield glass;
(b) caused by fire, lightning, smoke, or smudge; or
(c) as a result of damage sustained while the vehicle is being transported on any conveyance.

At the option of the *insured*, breakage of glass caused by *collision* may be paid under the Collision coverage, if included in the policy.

**2.** We will pay, up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to:

(a) fire;
(b) lightning;
(c) flood;
(d) falling objects;
(e) earthquake;
(f) explosion; or
(g) theft of the entire automobile.

No deductible will apply to *loss* from fire or lightning.

The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

**3.** *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

### *Collision*

**1.** We will pay for *collision loss* to the *owned* or *non-owned auto* for the amount of each *loss* less the applicable deductible.

**2.** We will pay up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to a *collision*. The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

**3.** *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

**1.** We will reimburse the *insured* for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the *loss*.

Reimbursement will not exceed $20.00 per day nor $600.00 per *loss*.

**2.** We will pay for *loss* to any of the following equipment (including *loss* to accessories and antennas):

(a) car phone;
(b) citizen's band radio;
(c) two-way mobile radio;
(d) scanning monitor receiver; or
(e) device designed for the recording and/or reproduction of sound.

We will pay only if the equipment at the time of *loss*:

(a) is permanently installed in or upon an *owned auto*; and
(b) that auto is insured under the appropriate coverage.

**3.** We will pay general average and salvage charges for which the *insured* becomes legally liable when the auto is being transported.

## EXCLUSIONS

### When The Physical Damage Coverages Do Not Apply

**1.** An auto used to carry passengers or goods for hire is not covered. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

**2.** *Loss* due to *war* is not covered.

**3.** We do not cover *loss* to a *non-owned auto* when used by the *insured* in the *auto business*.

**4.** There is no coverage for *loss* caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

**5.** We do not cover road damage to tires.

**6.** *Loss* due to radioactivity is not covered.

**7.** *Loss* to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound is not covered.

**8.** We do not cover *loss* to any radar detector.

**9.** We do not cover any vehicle or *trailer* when used for business or commercial purposes other than a *farm auto*.

**10.** We do not cover *loss* for custom options on an *owned auto*, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us.

**LIMIT OF LIABILITY**

The limit of our liability for *loss*:

**1.** is the *actual cash value* of the property at the time of the *loss*;

**2.** will not exceed the cost to repair or replace the property, or any of its parts, with other of like kind and quality and will not include compensation for any diminution in the property's value that is claimed to result from the *loss*.

**3.** to personal effects arising out of one occurrence is $200;

**4.** to a *trailer* not owned by *you* is $500;

**5.** for custom options is limited to the *actual cash value* of equipment, furnishings or finishings (including paint) installed in or upon the vehicle only by the auto factory or an authorized auto dealer and included in the purchase price of the vehicle.

*Actual cash value* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

**OTHER INSURANCE**

If the *insured* has other insurance against a *loss* covered by Section III, we will not owe more than our pro rata share of the total coverage available. Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

**CONDITIONS**

The following conditions apply only to the Physical Damage coverages:

**1.** NOTICE

As soon as possible after a *loss*, written notice must be given us or our authorized agent stating:

   (a) the identity of the *insured*;
   (b) a description of the auto or *trailer*;
   (c) the time, place and details of the *loss*; and
   (d) the names and addresses of any witnesses.

In case of theft, the *insured* must promptly notify the police.

**2.** TWO OR MORE AUTOS

If this policy covers two or more autos or *trailers*, the limit of coverage and any deductibles apply separately to each.

**3.** ASSISTANCE AND COOPERATION OF THE *INSURED*

The *insured* will cooperate and assist us, if requested:

   (a) in the investigation of the *loss*;
   (b) in making settlements;
   (c) in the conduct of suits;
   (d) in enforcing any right of subrogation against any legally responsible person or organization;
   (e) at trials and hearings;
   (f) in securing and giving evidence; and
   (g) by obtaining the attendance of witnesses.

**4.** ACTION AGAINST US

Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of *loss* is determined.

**5.** *INSURED'S* DUTIES IN EVENT OF *LOSS*

In the event of *loss* the *insured* will:

   (a) Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.
   (b) File with us, within 91 days after *loss*, his sworn proof of loss including all information we may reasonably require.
   (c) At our request, the *insured* will exhibit the damaged property and submit to examination under oath.

**6.** APPRAISAL

If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of loss is filed, demand an appraisal of the *loss*. In that event, we and the *insured* will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the **actual cash value** and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*. We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

We will not waive our rights by any of our acts relating to appraisal.

**7.** PAYMENT OF *LOSS*

We may at our option:

(a) pay for the *loss*; or
(b) repair or replace the damaged or stolen property.

At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

**8.** NO BENEFIT TO BAILEE

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

**9.** SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

## SECTION IV - UNINSURED MOTORISTS COVERAGE
**Protection For *You* And *Your* Passengers For Injuries Caused By Uninsured And Hit-And-Run Motorists**

### DEFINITIONS

The definitions of terms for Section I apply to Section IV, except for the following special definitions:

**1.** *"Hit-and-run auto"* is an auto causing *bodily injury* to an *insured* and whose operator or owner cannot be identified, provided the *insured* or someone on his behalf:

(a) reports the accident as soon as possible to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;
(b) files with us as soon as possible a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person.

**2.** *"Insured"* means:

(a) the individual named in the declarations and his or her spouse if a resident of the same household;
(b) *relatives* of (a) above if residents of his household;
(c) any other person while *occupying* an *insured auto*;
(d) any person who is entitled to recover damages because of *bodily injury* sustained by an *insured* under (a), (b), and (c) above.

If there is more than one *insured*, our limits of liability will not be increased.

**3.** *"Insured auto"* is an auto:

(a) described in the declarations and covered by the Bodily Injury Liability coverage of this policy;
(b) temporarily substituted for an *insured auto* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

(c) operated by *you* or *your* spouse if a resident of the same household.

But the term *"insured auto"* does not include:

(i) an auto used to carry passengers or goods for hire, except in a car-pool;
(ii) an auto being used without the owner's permission; or
(iii) under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an *insured*.

**4.** *"Occupying"* means in, upon, entering into or alighting from.

**5.** *"State"* includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

**6.** *"Uninsured auto"* is an auto:

(a) which has no liability bond or insurance policy applicable with liability limits complying with the Financial Responsibility Law of the *state* in which the *insured auto* is principally garaged at the time of the accident; or
(b) for which the total of all bodily injury liability insurance available in the event of an accident is less than the damages sustained in an accident by an *insured*; or
(c) a *hit-and-run auto*.

This term also includes an auto whose insurer is or becomes insolvent or denies coverage.

The term *"uninsured auto"* does not include:

(a) an *insured auto*;
(b) an auto owned or operated by a self insurer within the meaning of any motor vehicle finan-

cial responsibility law, motor carrier law or any similar law;

(c) an auto owned by the United States of America, any other national government, a *state*, or a political subdivision of any such government or its agencies;

(d) a land motor vehicle or *trailer* operated on rails or crawler treads or located for use as a residence or premises; and

(e) a farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

## LOSSES WE PAY

Under the Uninsured Motorists coverage we will pay damages for *bodily injury* caused by accident which the *insured* is legally entitled to recover from the owner or operator of an *uninsured auto* arising out of the ownership, maintenance or use of that auto.

However, we will not pay until the total of all bodily injury liability insurance available has been exhausted by payment of judgments or settlements.

## EXCLUSIONS

### When Section IV Does Not Apply

**1.** This coverage does not apply to *bodily injury* to an *insured* if the *insured* or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.

**2.** *Bodily injury* to an *insured* while *occupying* or when struck by any motor vehicle or motorcycle owned by an *insured* or a *relative*, which is not insured under the Liability Coverages section of this policy, is not covered.

**3.** The Uninsured Motorists coverage will not benefit any workmen's compensation insurer, self insurer, or disability benefits insurer.

**4.** We do not cover the United States of America or any of its agencies as an *insured*, a third party beneficiary or otherwise.

**5.** This coverage does not apply to any damages for pain and suffering that the *insured* may be legally entitled to recover against an uninsured motorist unless the injury or disease caused by the uninsured motorist accident resulted in:

(a) significant and permanent loss of an important bodily function; or

(b) permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement; or

(c) significant and permanent scarring or disfigurement; or

(d) death.

**6.** Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages.

## LIMITS OF LIABILITY

**1.** The limit of liability for Uninsured Motorists coverage stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to *bodily injury* sustained by one person as the result of one accident. The most we will pay for all such damages, sustained by one person as the result of one accident, is the sum of the "each person" limits for Uninsured Motorists coverage shown in the declarations.

**2.** The limit of liability stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of one accident. The most we will pay for all such damages, sustained by two or more persons as the result of one accident, is the sum of the "each accident" limits for Uninsured Motorists coverage shown in the declarations.

**3.** The limit of liability for Uninsured Motorist coverage shall be over and above, but shall not duplicate the benefits available to an *insured* under any:

(a) workers' compensation law;
(b) personal injury protection benefits;
(c) disability benefits law or similar law; or
(d) automobile medical expense coverage.

**4.** The limit of liability for Uninsured Motorist coverage shall be over and above, but shall not duplicate any amount paid or payable:

(a) under any motor vehicle liability insurance coverages; or

(b) by or on behalf of the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident.

## OTHER INSURANCE

When an *insured occupies* an auto not described in this policy, and not owned by that *insured* or a *relative*, this insurance is excess over any other similar insurance available to the *insured* and the insurance which applies to the *occupied* auto is primary.

If the *insured* has other insurance against a loss covered by the Uninsured Motorist provisions of this policy, we will not be liable for more than our pro-rata share of the total coverage available.

## DISPUTES BETWEEN US AND AN *INSURED*

**1.** Disputes between an *insured* and us as to liability and damages may be submitted to arbitration. Arbitration must be agreed to in writing between the *insured* and us.

If arbitration is agreed upon, each party shall select an impartial arbitrator. These arbitrators shall select a third one.

The cost of the arbitration and any expenses for experts shall be paid by the party who hired them. The cost of the third arbitrator shall be paid equally by the parties.

**2.** If the **insured** and we cannot agree to arbitrate or agree to a third arbitrator, the **insured** shall:

   (a) sue the owner or driver of the **uninsured auto** and us in a court of competent jurisdiction. If the owner or driver is unknown, name us as the defendant.

   (b) when suit is filed, immediately give us copies of the suit papers.

**3.** If the **insured** agrees to settle with another insurer for their limits of liability coverage, the **insured** must submit this agreement to us in such settlement if the **insured** intends to pursue an uninsured motorist claim against us.

**4.** If within 30 days after receipt of the settlement agreement, we do not:

   (a) approve the settlement and the signing of the full release;

   (b) waive our subrogation rights; and

   (c) agree to arbitrate the claim,

the **insured** may then file suit against us and the person(s) legally liable.

**5.** Any award against us shall be binding and conclusive against us and the **insured** up to our coverage limit.

**TRUST AGREEMENT**

Whenever we make a payment under this coverage:

**1.** We will be entitled to repayment of that amount out of any settlement or judgment the **insured** recovers from any person or organization legally responsible for the **bodily injury**.

**2.** The **insured** will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages. He will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

**3.** At our written request, the **insured**, in his own name, will take through a designated representative appropriate actions necessary to recover payment for damages from the legally responsible person or organization. The **insured** will pay us out of the recovery for our expenses, costs and attorney's fees.

**4.** The **insured** will execute and furnish us with any needed documents to secure his and our rights and obligations.

**CONDITIONS**

The following conditions apply only to the Uninsured Motorist coverage:

**1.** NOTICE

As soon as possible after an accident, notice must be given us or our authorized agent stating:

   (a) the identity of the **insured**;

   (b) the time, place and details of the accident; and

   (c) the names and addresses of the injured, and of any witnesses.

If the **insured** or his legal representative files suit before we make a settlement under this coverage, he must immediately provide us with a copy of the pleadings.

**2.** ASSISTANCE AND COOPERATION OF THE **INSURED**

After we receive notice of a claim, we may require the **insured** to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require the **insured** to make that person or organization a defendant in any action against us.

**3.** ACTION AGAINST US

Suit will not lie against us unless the **insured** or his legal representative have fully complied with all the policy terms.

**4.** PROOF OF CLAIM - MEDICAL REPORTS

As soon as possible, the **insured** or other person making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable.

The **insured** and other persons making claim must submit to examination under oath by any person named by us when and as often as we may reasonably require. Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the **insured's** incapacity or death, his legal representative must, at our request, authorize us to obtain medical reports and copies of records.

**5.** PAYMENT OF LOSS

Any amount due is payable:

   (a) to the **insured** or his authorized representative;

   (b) if the **insured** is a minor, to his parent or guardian; or

(c) if the *insured* is deceased, to his surviving spouse; otherwise

(d) to a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

## SECTION V - GENERAL CONDITIONS
### These Conditions Apply To All Coverages In This Policy.

### 1. TERRITORY - POLICY PERIOD

This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories and possessions, or Canada and while an *owned auto* is being transported between ports thereof.

Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and *your* acceptance prior to the expiration date. Each period will begin and expire at 12:01 A.M. local time at *your* address stated in the declarations.

### 2. PREMIUM

When *you* dispose of, acquire ownership of, or replace a *private passenger*, *farm* or *utility auto*, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

### 3. CHANGES

The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your* state.

The premium for each auto is based on the information we have in *your* file. *You* agree:

(a) that we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

(b) that *you* will cooperate with us in determining if this information is correct and complete.

(c) that *you* will notify us of any changes in this information.

Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

### 4. ASSIGNMENT

Assignment of interest under this policy will not bind us without our consent.

If *you* die, this policy will cover:

We may, at our option, pay an amount due in accordance with (d) above.

(a) *your* surviving spouse;

(b) the executor or administrator of *your* estate, but only while acting within the scope of his duties;

(c) any person having proper temporary custody of the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate; and

(d) under the medical payments coverage, a person who was a *relative* at the time of *your* death.

### 5. CANCELLATION BY THE *INSURED*

*You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective.

However, *you* may not cancel during the first two months immediately following *your* policy's effective date except:

(a) upon total destruction of all of the *owned autos*;

(b) upon transfer of ownership of all of the *owned autos*;

(c) if *you* obtained a replacement policy covering an *owned auto* elsewhere; or

(d) when we notify *you* that the premium charged must be increased to comply with our rate filings or the applicable laws of Florida. In such event, *you* have ten days in which to request cancellation of the policy and a return of the unearned premium.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed on a pro-rated basis according to our manuals.

### 6. CANCELLATION BY US

We may cancel this policy by mailing to *you*, at the address shown in this policy, written notice stating when the cancellation will be effective. This notice will be mailed by United States Post Office certificate of mailing.

We will mail this notice:

(a) 10 days in advance if the proposed cancellation is for nonpayment of premium or any of its installments when due;

(b) 45 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled, **you** may be entitled to a premium refund. The premium refund, if any, will be computed on a pro-rated basis according to our manuals.

Payment or tender of unearned premium is not a condition of cancellation.

### 7.  CANCELLATION BY US IS LIMITED

After this policy has been in effect for 60 days or, if the policy is a renewal, effective immediately, we will not cancel unless:

(a) **You** do not pay the premiums for this policy or any installment when due to us or our agent; or

(b) Any **insured** has had his driver's license or motor vehicle registration under suspension or revocation; either:

    (i) during the current policy period; or
    (ii) during the preceding 180 days if this is a new policy; or

(c) There has been fraud or material misrepresentation under the policy in **your** application or in making a claim.

We will not cancel a new policy during the first 60 days immediately following the the effective date of the policy for nonpayment of premium unless the reason for the cancellation is the issuance of a check for the premium that is dishonored for any reason.

Nothing in this section will require us to renew this policy.

### 8.  RENEWAL

We agree that we will not refuse to renew or continue this policy unless a written notice of our refusal to renew or continue is mailed to **you**, at the address shown in this policy, at least 45 days prior to the expiration date. This notice will be mailed by United States Post Office certificate of mailing. The mailing or delivery of this notice will be sufficient proof of notice.

If:

(1) **you** do not pay the premium as required to renew this policy; or

(2) **you** have informed us or our agent that **you** wish the policy cancelled or not renewed; or

(3) **you** do not accept our offer to renew; or

(4) **you** refuse to provide us with renewal classification and rating information as we may require;

it will be construed to mean that **you** have refused our renewal offer and the policy will expire without notice.

If this policy has been in effect for 5 years or more we will not refuse to renew solely because an **insured** was involved in a single traffic accident.

### 9.  MEDIATION OF CLAIMS

In the event of a claim for **bodily injury** amounting to $10,000 or less, or any property damage claim, either party may demand mediation of the claim, provided that suit has not yet been filed. Only one mediation may be demanded for each claim, unless both parties agree to more than one mediation. Mediation is not binding on either party.

A request for mediation shall be filed with the Department of Insurance on a form approved by the Department. The request for mediation shall state the reason for the request and the issues in dispute which are to be mediated. The Department of Insurance will appoint the mediator to conduct the mediation. Each party may once reject the mediator selected by the Department, either originally or after the opposing side has exercised its option to reject a mediator. Each party participating in the mediation must have the authority to make a binding decision. All parties must mediate in good faith.

The cost of the mediation, as set by the Department of Insurance, is shared equally by the parties. Costs incurred by a party in preparing for or attending the mediation are paid by the party incurring that cost.

### 10.  OTHER INSURANCE

If other insurance is obtained on **your** insured auto, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

### 11.  ACTION AGAINST US

Persons other than the **insured** covered by this policy, may not name us as a defendant prior to first obtaining a judgment against an **insured**.

### 12.  DIVIDEND PROVISION

**You** are entitled to share in a distribution of the surplus of the Company as determined by its Board of Directors from time to time.

### 13.  DECLARATIONS

By accepting this policy, **you** agree that:

(a) the statements in **your** application and in the declarations are **your** agreements and representations;

(b) this policy is issued in reliance upon the truth of these representations; and

(c) this policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

### 14.  FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

1.  at the time application is made; or
2.  at any time during the policy period; or

3. in connection with the presentation or settlement of a claim.

### 15. EXAMINATION UNDER OATH

The *insured* or any other person seeking coverage under this policy must submit to examination under oath by any person named by us when and as often as we may reasonably require.

### 16. TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of Florida are amended to conform to those statutes.

## SECTION VI - AMENDMENTS AND ENDORSEMENTS

1. SPECIAL ENDORSEMENT
UNITED STATES GOVERNMENT EMPLOYEES

**A.** Under the Property Damage coverage of Section I, we provide coverage to United States Government employees, civilian or military, using

1. Motor vehicles owned or leased by the United States Government or any of its agencies, or
2. Rented motor vehicle used for United States Government business,

when such use is with the permission of the United States Government. Subject to the limits describe in paragraph **B.** below, we will pay sums *you* are legally obligated to pay for damage to these vehicles.

**B.** The following limits apply to this coverage:

1. A $100 deductible applies to each occurrence.
2. For vehicles described in **A.1.** above, our liability shall not exceed the lesser of the following:

   a. The **actual cash value** of the property at the time of the occurrence; or
   b. The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
   c. Two months basic pay of the *insured*; or
   d. The limit of Property Damage liability coverage stated in the declarations.

3. For vehicles described in **A.2.** above, our liability shall not exceed the lesser of the following:

   a. the **actual cash value** of the property at the time of the occurrence; or
   b. The cost to repair or replace the property, or any of it parts with other of like kind and quality; or
   c. The limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.

J. C. Stewart
Secretary

O. M. Nicely
President

GOVERNMENT EMPLOYEES INSURANCE COMPANY
GEICO CASUALTY COMPANY
GEICO GENERAL INSURANCE COMPANY
GEICO INDEMNITY COMPANY
HOME OFFICE - 5260 Western Avenue
Chevy Chase, Maryland 20815-3799

**GEICO**

## Automobile Policy Amendment

### Florida

Policy Number:

Your policy is amended as follows:

SECTION II - PERSONAL INJURY PROTECTION AND AUTOMOBILE MEDICAL PAYMENTS

The title is changed to read:

SECTION II - PERSONAL INJURY PROTECTION

PART I - PERSONAL INJURY PROTECTION is changed to read:

PERSONAL INJURY PROTECTION (Includes Automobile Medical Payments coverage only if a premium amount is shown in the Policy Declarations for "Medical Payments" coverage)

**PAYMENTS WE WILL MAKE**

The first sentence is changed to read:

Under Personal Injury Protection, the Company will pay, in accordance with the Florida Motor Vehicle No-Fault Law, as amended, to or for the benefit of the injured person:

**EXCLUSIONS**

Exclusion (a) is changed to read:

(a) to *you* or any *relative* injured while *occupying* any *motor vehicle* owned by *you* and which is not an *insured motor vehicle* under this insurance;

Exclusion (d) is changed to read:

(d) to *you* or any dependent *relative* for *work loss* if an entry in the schedule or declarations indicates such coverage does not apply;

**LIMIT OF LIABILITY; APPLICATION OF DEDUCTIBLE; OTHER INSURANCE**

The last paragraph of this section is deleted.

**CONDITIONS**

Condition 3. is replaced entirely with the following:

3. Proof of Claim; Medical Reports and Examinations; Payment of Claim Withheld. As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and

treatment received and contemplated, and such other information as may assist us in determining the amount due and payable. Such person shall submit to mental or physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. Such examinations shall be conducted within the municipality where the *insured* is receiving treatment, or in a location reasonably accessible to the *insured*, which, for purposes of this paragraph, means any location within the municipality in which the *insured* resides, or any location within 10 miles by road of the *insured's* residence, provided such location is within the county in which the *insured* resides. If the person unreasonably refuses to submit to an examination, we will not be liable for subsequent personal injury protection benefits. Whenever a person making a claim is charged with committing a felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

Condition 6., Arbitration, is deleted.

**PART II - MODIFICATION OF POLICY COVERAGES** is changed to read:

**MODIFICATION OF POLICY COVERAGES**

**PART III - PROVISIONAL PREMIUM** is changed to read:

**PROVISIONAL PREMIUM**

SECTION IV - UNINSURED MOTORISTS COVERAGE

**DEFINITIONS**

Under what the term *"uninsured auto"* does not include, subparagraph (b) is deleted.

SPECIMEN

LOSSES WE PAY

The following sentence is added to the first paragraph:

However, we will not pay damages for: (a) pain; (b) suffering; (c) mental anguish; or (d) inconvenience unless the *bodily injury* consists in whole or in part of:

(a) significant and permanent loss of an important bodily function; or

(b) permanent injury within a reasonable degree of medical probability; or

(c) permanent scarring or disfigurement; or

(d) death.

The second paragraph is deleted.

EXCLUSIONS

Exclusion 5. is deleted.

We affirm this amendment.

J. C. Stewart
Secretary

GOVERNMENT EMPLOYEES INSURANCE COMPANY  •
GEICO GENERAL INSURANCE COMPANY

O. M. Nicely
President

## Uninsured Motorist Coverage (Non-Stacked)
### (Florida)

Policy Number:

In consideration of the payment of premium for this coverage, and subject to all the terms of the policy, we agree with *you* as follows:

Section IV, LIMIT OF LIABILITY, is amended by adding the following paragraphs:

5. When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations.

6. If at the time of the accident the injured person is *occupying* an auto insured by us, the amount of coverage available to the injured person is the limit specified in the declarations for the *occupied* auto.

7. If at the time of the accident the injured person is not *occupying* a motor vehicle, the injured person is entitled to select any one limit of any one auto insured under this coverage.

8. If at the time of the accident the injured person is *occupying* a motor vehicle which is not owned by him or by a family member residing with him, he is entitled to the highest limits of uninsured motorist coverage afforded for any one vehicle as to which he is the named insured or insured family member. Such coverage shall be excess over the coverage on the vehicle he is *occupying*.

If separate policies with us are in effect for *you* or any person in *your* household, they may not be combined to increase the limit of liability for a loss.

THE COMPANY affirms this endorsement.

J. C. Stewart
Secretary          •          GOVERNMENT EMPLOYEES INSURANCE COMPANY          •          O. M. Nicely
                                                    GEICO GENERAL INSURANCE COMPANY                                    President

A-239 (7-88)

SPECIMEN

IN THE CIRCUIT COURT FOR THE SIXTH
JUDICIAL CIRCUIT IN AND FOR PINELLAS
COUNTY, STATE OF FLORIDA - CIVIL DIVISION

CRISANTO C. OXONIAN,
as Personal Representative of the
ESTATE OF MARIA I. OXONIAN, Deceased,

     Plaintiff,

v.                              Case Number: 07-009926CI-007

JESSICA LAUREN WICKY and
WILLIAM GILBERT STRICKLAND,

     Defendants.
_____/

## AMENDED FINAL JUDGMENT AGAINST JESSICA LAUREN WICKY

     Pursuant to the Arbitration Verdict rendered on January 24, 2022, for which no party requested

trial *de novo*, and subsequent agreement of the parties, the Court adopts said verdict and enters judgment

pursuant to the panel's verdict. Accordingly, it is hereby;

     **ADJUDGED** that **FINAL JUDGMENT** is hereby entered in favor of Plaintiff, CRISTANO C.

OXONIAN, as personal representative of the ESTATE OF MARIA I. OXONIAN against JESSICA

LAUREN WICKY as provided below:

1. The Court deducts $267,630.08 from the Arbitration Verdict for collateral sources, which will be
   deducted *pro rata* from the awards to the Estate and survivors.

2. The ESTATE OF MARIA I. OXONIAN is awarded the sum of $1,069,553.48

3. CRISTANO C. OXONIAN is awarded the sum of $2,039,169.71

4. CRISTIAN OXONIAN is awarded the sum of $804,391.88

5. KRISTEN OXONIAN is awarded the sum of $804,391.88

6. Execution may issue for the above sums against Defendant JESSICA LAUREN WICKY.

7. JESSICA LAUREN WICKY's obligation for this judgment is joint and several to the judgment
   enter against Co-Defendant WILLIAM GILBERT STRICKLAND.

EXHIBIT "B1" TO PLAINTIFFS' COMPLAINT FOR THIRD PARTY BAD FAITH
FILED 5/8/2024
***ELECTRONICALLY FILED 4/26/2023 2:00:51 PM KEN BURKE, CLERK OF THE CIRCUIT COURT, PINELLAS COUNTY***

8. Interest on the above sums shall accrue at the rate of 5.52% as of the date of this Judgment, and shall be adjusted as provided by Florida Statute 55.03(1).

9. The Court hereby reserves jurisdiction to determine and award reasonable attorneys' fees.

10. The Court reserves jurisdiction to enter further orders that are proper, including without limitation, writs of execution, orders on proceedings supplementary, and all other post-judgment orders as may be appropriate.

**DONE AND ORDERED** in chambers, Clearwater, Pinellas County, Florida this _____ day of _____, 2023.

Circuit Judge Patricia A. Muscarella
07-000926-CI 4/26/2023 2:00:51 PM
The Honorable Patricia A. Muscarella

Copies Furnished to:

Bryan Caulfied, Esquire (qibaret@usalaw.com)
T.R. Unice, Jr., Esquire (vengelson@unicesalzman.com)

00591810.DOCX

IN THE CIRCUIT COURT FOR THE SIXTH
JUDICIAL CIRCUIT IN AND FOR PINELLAS
COUNTY, STATE OF FLORIDA - CIVIL DIVISION

CRISANTO C. OXONIAN,
as Personal Representative of the
ESTATE OF MARIA I. OXONIAN, Deceased,

       Plaintiff,

v.                              Case Number: 07-009926CI-007

JESSICA LAUREN WICKY and
WILLIAM GILBERT STRICKLAND,

       Defendants.
_____/

## PROPOSED FINAL JUDGMENT AGAINST
## WILLAIM GILBERT STRICKLAND

      Pursuant to the Arbitration Verdict rendered on January 24, 2022, the Court adopts said verdict
and enters judgment pursuant to the panel's verdict.

      Accordingly, it is hereby;

      **ADJUDGED** that **FINAL JUDGMENT** is hereby entered in favor of Plaintiff, CRISTANO C.
OXONIAN, as personal representative of the ESTATE OF MARIA I. OXONIAN against WILLIAM
GILBERT STRICKLAND, as  provided below in accordance with the arbitration verdict and execution
may issue, except as to William Gilbert Strickland which is subject to the Federal Bankruptcy Court,
Order of Discharge dated July 21, 2020 in <u>William Gilbert Strickland</u>, Case No.: 15-30775, in the
Western District of North Carolina.

1. The ESTATE OF MARIA I. OXONIAN is awarded the sum of $1,126,228.23 ($1,130,225.21
   minus $17,630.08 for collateral sources).

2. CRISTANO C. OXONIAN is awarded the sum of $2,155,000.00.

3. CRISTIAN OXONIAN is awarded the sum of $850,0000.00.

4. KRISTEN OXONIAN is awarded the sum of $850,000.00.

EXHIBIT "B2" TO PLAINTIFFS' COMPLAINT FOR THIRD PARTY BAD FAITH
FILED 5/8/2024

5.  Interest on the above sums shall accrue at the rate of 5.525% as of the date of this Judgment, and shall be adjusted as provided by Florida Statute 55.03(1).

6.  The Court hereby reserves jurisdiction to determine and award reasonable attorneys' fees.

7.  That the recovery of any damages against William Gilbert Strickland is limited as set forth in the Federal Bankruptcy Court's September 15, 2015 Consent Order granting Limited Relief from Stay and the July 21, 2020 Order of Discharge, Case No. 15-30775.  These orders are incorporated by reference and attached as exhibits to this Judgment.

8.  The Court reserves jurisdiction to enter further orders that are proper, including without limitation, writs of execution, orders on proceedings supplementary, and all other post-judgment orders as may be appropriate.

**DONE AND ORDERED** in chambers, Clearwater, Pinellas County, Florida this _28_ day of _March_, 2023.

_____
The Honorable Patricia A. Muscarella

TRUE COPY
ORIGINAL SIGNED

MAR 2 8 2023

Patricia A. Muscarella
PATRICIA A. MUSCARELLA
CIRCUIT JUDGE

Copies Furnished to:

Bryan Caulfied, Esquire (qibaret@usalaw.com)
T.R. Unice, Jr., Esquire (vengelson@unicesalzman.com)

00599043.DOCX

```
FILED & JUDGMENT ENTERED
        Steven T Salata


        Sep 15 2015


     Clerk, U.S. Bankruptcy Court
  Western District of North Carolina
```

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE:                          )
                                )
WILLIAM GILBERT STRICKLAND,     )       Case No. 15-30775
SSN:  xxx-xx-9578               )       Chapter 13
                                )
                  Debtor.       )
_____)

### Consent Order Granting Limited Relief from Stay

This matter is before the Court upon the Motion for Relief from Stay filed by Crisanto C. Oxonian, as Personal Representative of the Estate of Maria I. Oxonian, Deceased (hereinafter, the "Oxonian Estate") and the response thereto filed by the Debtor. Based upon the consents below, it is hereby ORDERED that the stay be, and hereby is, modified to allow the Oxonian Estate to prosecute the case entitled *Crisanto C. Oxonian, as Personal Representative of the Estate of Maria I. Oxonian, Deceased, Plaintiff vs. Jessica Lauren Wicky, Karen Smith Strickland and William Gilbert Strickland,* Circuit Civil Case No. 07-009926-CI-007, in the Circuit Court in and for Pinellas County, Florida and that recovery of any damage award be limited to the Debtor's insurance carrier. The ten-day stay period of Rule 4001(a)(3) of the

1

Federal Rules of Bankruptcy Procedure shall not apply.  The automatic stay under 11 U.S.C. §

362(a) otherwise remains in effect.

TO THE FOREGOING, WE CONSENT:

/s/ Frederick L. Henderson, Jr.,
Frederick L. Henderson, Jr., N.C. Bar # 43586
Sigmon & Henderson, PLLC
518 S. New Hope Road
Gastonia, NC  28054
Tel. 704.865.6265; Fax 704.874.1300
*Attorneys for the Debtor*

/s/ G. Martin Hunter
G. Martin Hunter, N.C. Bar # 13557
301 S. McDowell St.
Suite 1014
Charlotte, NC  28204
Tel. 704.377.8764 Fax 704.377.0590
*Attorney for Crisanto C. Oxonian,*
*Personal Representative of the*
*Estate of Maria I. Oxonian, Dec'd*

NO OBJECTION:

/s/ Warren L. Tadlock
Warren L. Tadlock, Chapter 13 Trustee

This Order has been signed electronically.
The Judge's signature and Court's seal
appear at the top of the Order.

United States Bankruptcy Court

2

**Information to identify the case:**

| | | | | |
|---|---|---|---|---|
| Debtor 1 | **William Gilbert Strickland** | | | Social Security number or ITIN   xxx–xx–9578 |
| | First Name   Middle Name   Last Name | | | EIN   __-_____ |
| Debtor 2 | First Name   Middle Name   Last Name | | | Social Security number or ITIN   ____ |
| (Spouse, if filing) | | | | EIN   __-_____ |
| United States Bankruptcy Court | Western District of North Carolina | | | |
| Case number: | 15–30775 | | | |

## Order of Discharge

12/18

IT IS ORDERED: A discharge under 11 U.S.C. § 1328(a) is granted to:

William Gilbert Strickland
aka William G. Strickland

7/21/20

By the court: Laura T. Beyer
United States Bankruptcy Judge

---

### Explanation of Bankruptcy Discharge in a Chapter 13 Case

This order does not close or dismiss the case.

**Creditors cannot collect discharged debts**

This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

This order does not prevent debtors from paying any debt voluntarily. 11 U.S.C. § 524(f).

**Most debts are discharged**

Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts provided for by the chapter 13 plan.

In a case involving community property: Special rules protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.

**Some debts are not discharged**

Examples of debts that are not discharged are:

♦ debts that are domestic support obligations;

♦ debts for most student loans;

♦ debts for certain types of taxes specified in 11 U.S.C. §§ 507(a)(8)( C), 523(a)(1)(B), or 523(a)(1)(C) to the extent not paid in full under the plan;

**For more information, see page 2>**

Form 3180W                    **Chapter 13 Discharge**                    page 1

♦ debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case;

♦ debts for restitution, or a criminal fine, included in a sentence on debtor's criminal conviction;

♦ some debts which the debtors did not properly list;

♦ debts provided for under 11 U.S.C. § 1322(b)(5) and on which the last payment or other transfer is due after the date on which the final payment under the plan was due;

♦ ..... .. .... .. .... .. ... ....... made after the bankruptcy case was filed if securing the debt was practicable but was not obtained;

♦ debts for restitution, or damages, awarded in a civil action against the debtor as a result of malicious or willful injury by the debtor that caused personal injury to an individual or the death of an individual; and

♦ debts for death or personal injury caused by operating a vehicle while intoxicated.

In addition, this discharge does not stop creditors from collecting from anyone else who is also liable on the debt, such as an insurance company or a person who cosigned or guaranteed a loan.

.. .. ..... .... .. . ... . ......  summary of a chapter 13 discharge; some  complicated, you should consult an attorney to determine the exact effect of the discharge in this case.

Form 3180W                    **Chapter 13 Discharge**                    page 2

021675        3040902169019

IN THE CIRCUIT COURT FOR THE SIXTH
JUDICIAL CIRCUIT IN AND FOR PINELLAS
COUNTY, STATE OF FLORIDA - CIVIL DIVISION

CRISANTO C. OXONIAN,
as Personal Representative of the
ESTATE OF MARIA I. OXONIAN, Deceased,

     Plaintiff,

v.                            Case Number: 07-009926CI-007

JESSICA LAUREN WICKY and
WILLIAM GILBERT STRICKLAND,

     Defendants.
_____/

## PROPOSED FINAL JUDGMENT AGAINST JESSICA LAUREN WICKY

Pursuant to the Arbitration Verdict rendered on January 24, 2022, the Court adopts said verdict
and enters judgment pursuant to the panel's verdict.

Accordingly, it is hereby;

**ADJUDGED** that **FINAL JUDGMENT** is hereby entered in favor of Plaintiff, CRISTANO C.
OXONIAN, as personal representative of the ESTATE OF MARIA I. OXONIAN against JESSICA
LAUREN WICKY as provided below:

1. The ESTATE OF MARIA I. OXONIAN is awarded the sum of $1,112,595.13 ($1,130,225.21
   minus $17,630.08 for collateral sources).

2. CRISTANO C. OXONIAN is awarded the sum of $2,155,000.00.

3. CRISTIAN OXONIAN is awarded the sum of $850,000.00.

4. KRISTEN OXONIAN is awarded the sum of $850,000.00.

5. Execution may issue for the above sums against Defendant JESSICA LAUREN WICKY.

6. Interest on the above sums shall accrue at the rate of 5.52% as of the date of this Judgment, and
   shall be adjusted as provided by Florida Statute 55.03(1).

7. The Court hereby reserves jurisdiction to determine and award reasonable attorneys' fees.

8. The Court reserves jurisdiction to enter further orders that are proper, including without limitation, writs of execution, orders on proceedings supplementary, and all other post-judgment orders as may be appropriate.

**DONE AND ORDERED** in chambers, Clearwater, Pinellas County, Florida this 28 day of March, 2023.

The Honorable Patricia A. Muscarella

TRUE COPY
ORIGINAL SIGNED

MAR 28 2023

Patricia A. Muscarella
PATRICIA A. MUSCARELLA
CIRCUIT JUDGE

Copies Furnished to:

Bryan Caulfield, Esquire (qibaret@usalaw.com)
T.R. Unice, Jr., Esquire (vengelson@unicesalzman.com)

Filing # 171112559 E-Filed 04/17/2023 10:21:27 AM

IN THE CIRCUIT COURT IN AND FOR PINELLAS COUNTY, FLORIDA
CASE NO.: 07-009926-CI-007

CRISANTO C. OXONIAN,
as Personal Representative of the
ESTATE OF MARIA I. OXONIAN, Deceased,

        Plaintiff,

vs.

JESSICA LAUREN WICKY and
WILLIAM STRICKLAND,

        Defendants.

_____/

## PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

COMES NOW, the Plaintiff, CRISANTO C. OXONIAN, as Personal Representative of

the ESTATE OF MARIA I. OXONIAN, Deceased, by and through the undersigned attorney, and

pursuant to Fla. R. Civ. P. 1.525, Fla. R. Civ. P. 1.442, and Fla. Stat. § 768.79, hereby files its

Motion for Attorney's Fees, and in support thereof would state:

### I.    PLAINTIFF IS THE PREVAILING PARTY

1.    The parties submitted this matter to nonbinding arbitration. A verdict was served by the

arbitrators on January 24, 2022.

2.    Neither party filed a demand for Trial de novo, consequently making the Arbitrator's

decision was final on the merits.

3.    On March 28, 2023, this Court entered judgment against both Defendant JESSICA

LAUREN WICKY and Defendant WILLIAM STRICKLAND. A copy of the Court's Order is

attached as Exhibit A.

4.    As the prevailing party in this case, Plaintiff is seeking Attorney's Fees pursuant to Fla.

R. Civ. P. 1.525, Fla. R. Civ. P. 1.442, and Fla. Stat. § 768.79.

## EXHIBIT "C" TO PLAINTIFFS' COMPLAINT FOR THIRD PARTY BAD FAITH FILED 5/8/2024

## II.   DEFENDANT WILLIAM STRICKLAND DID NOT ACCEPT
## PLAINTIFF'S MAY 1, 2015 PROPOSAL FOR SETTLEMENT

5.      On May 1, 2015, Plaintiff filed a Proposal for Settlement in good faith on Defendant

William Strickland  pursuant to and in accordance with Fla. R. Civ. P. 1.442, and Fla. Stat. §

768.79. A copy of the Proposal for Settlement is attached as Exhibit B.

6.      The aforementioned Proposal for Settlement was served via Email on May 1, 2015. A

copy of the Email to the Defendants and the Court Filing is attached as Exhibit C.

7.      The Defendant William Strickland did not accept Plaintiff's Proposal for Settlement at

any time within the 30 days after it was served.

8.      On March 28, 2023, this Court entered judgment against Defendant WILLIAM

STRICKLAND that was 25% greater than the amount offered by Plaintiff in its May 1, 2015

Proposal for Settlement.

9.      Florida Rule of Civil Procedure 1.525 states that:

> "Any party seeking a judgment taxing costs, attorneys' fees, or both shall serve a motion
> no later than 30 days after filing of the judgment, including a judgment of dismissal, or
> the service of a notice of voluntary dismissal."

10.     Further, Florida Statute § 768.79 provides that:

> "(1) In any civil action for damages filed in the courts of this state, if a defendant files an
> offer of judgment which is not accepted by the plaintiff within 30 days, the defendant
> shall be entitled to recover reasonable costs and attorney's fees incurred by her or him or
> on the defendant's behalf pursuant to a policy of liability insurance or other contract from
> the date of filing of the offer if the judgment is one of no liability or the judgment
> obtained by the plaintiff is at least 25 percent less than such offer, and the court shall set
> off such costs and attorney's fees against the award. Where such costs and attorney's fees
> total more than the judgment, the court shall enter judgment for the defendant against the
> plaintiff for the amount of the costs and fees, less the amount of the plaintiff's award. If a
> plaintiff files a demand for judgment which is not accepted by the defendant within 30
> days and the plaintiff recovers a judgment in an amount at least 25 percent greater than
> the offer, she or he shall be entitled to recover reasonable costs and attorney's fees
> incurred from the date of the filing of the demand. If rejected, neither an offer nor
> demand is admissible in subsequent litigation, except for pursuing the penalties of this

section.

…

(7) Upon motion made by the offeror within 30 days after the entry of judgment or after voluntary or involuntary dismissal, the court shall determine the following: (b) If a plaintiff serves an offer which is not accepted by the defendant, and if the judgment obtained by the plaintiff is at least 25 percent more than the amount of the offer, the plaintiff shall be awarded reasonable costs, including investigative expenses, and attorney's fees, calculated in accordance with the guidelines promulgated by the Supreme Court, incurred from the date the offer was served."

11.     Additionally, Florida Rule of Civil Procedure 1.442 states:

"(f) Acceptance and Rejection.
(1) A proposal shall be deemed rejected unless accepted by delivery of a written notice of acceptance within 30 days after service of the proposal. The provisions of Florida Rule of General Practice and Judicial Administration 2.514(b) do not apply to this subdivision. No oral communications shall constitute an acceptance, rejection, or counteroffer under the provisions of this rule."

12.     As such, since the Court entered judgment in Plaintiff's favor greater than 25% of the

amount offered by Plaintiff in the May 1, 2015 Proposal of Settlement sent to Defendant

WILLIAM STRICKLAND, Plaintiff is entitled to all attorney's fees from the date of the

Proposal for Settlement (May 1, 2015) until entitlement is established by this Court.

## CERTIFICATE OF SERVICE

        I HEREBY CERTIFY that the a true copy of the foregoing were furnished Via Florida E-

Portal to T.R. Unice, Esquire, and Jeffrey Jensen, Esquire, at the following designated emails:

service@unicesalzman.com; jjensen@unicesalzman.com; vengelson@unicesalzman.com; to

Angelina E. Lim, Esquire at the following designated emails: AngelinaL@jpfirm.com; and

MinervaG@jpfirm.com; and to Scott Stichter, Esquire at the following designated email:

Sstichter@srbp.com; on this 17 day of April, 2023.

PERENICH, CAULFIELD, AVRIL & NOYES, P.A.

_____
Bryan D. Caulfield, Esquire
FBN: 760530
1875 North Belcher Road, Suite 201
Clearwater, Florida 33765
Ph (727) 796-8282; Fax (727) 797-3667
Primary E-mail: Bryan@usalaw.com
Secondary E-mail: Qibaret@usalaw.com
Plaintiff's Attorney

IN THE CIRCUIT COURT FOR THE SIXTH
JUDICIAL CIRCUIT IN AND FOR PINELLAS
COUNTY, STATE OF FLORIDA - CIVIL DIVISION

CRISANTO C. OXONIAN,
as Personal Representative of the
ESTATE OF MARIA I. OXONIAN, Deceased,

     Plaintiff,

v.                                     Case Number: 07-009926CI-007

JESSICA LAUREN WICKY and
WILLIAM GILBERT STRICKLAND,

     Defendants.
_____/

## PROPOSED FINAL JUDGMENT AGAINST JESSICA LAUREN WICKY

     Pursuant to the Arbitration Verdict rendered on January 24, 2022, the Court adopts said verdict and enters judgment pursuant to the panel's verdict.

     Accordingly, it is hereby;

     **ADJUDGED** that **FINAL JUDGMENT** is hereby entered in favor of Plaintiff, CRISTANO C. OXONIAN, as personal representative of the ESTATE OF MARIA I. OXONIAN against JESSICA LAUREN WICKY as provided below:

1. The ESTATE OF MARIA I. OXONIAN is awarded the sum of $1,112,595.13 ($1,130,225.21 minus $17,630.08 for collateral sources).

2. CRISTANO C. OXONIAN is awarded the sum of $2,155,000.00.

3. CRISTIAN OXONIAN is awarded the sum of $850,000.00.

4. KRISTEN OXONIAN is awarded the sum of $850,000.00.

5. Execution may issue for the above sums against Defendant JESSICA LAUREN WICKY.

6. Interest on the above sums shall accrue at the rate of 5.52% as of the date of this Judgment, and shall be adjusted as provided by Florida Statute 55.03(1).

_ Exhibit "A"

7.  The Court hereby reserves jurisdiction to determine and award reasonable attorneys' fees.

8.  The Court reserves jurisdiction to enter further orders that are proper, including without limitation, writs of execution, orders on proceedings supplementary, and all other post-judgment orders as may be appropriate.

**DONE AND ORDERED** in chambers, Clearwater, Pinellas County, Florida this 28 day of March, 2023.

The Honorable Patricia A. Muscarella

TRUE COPY
ORIGINAL SIGNED

MAR 28 2023

Patricia A. Muscarella
PATRICIA A. MUSCARELLA
CIRCUIT JUDGE

Copies Furnished to:

Bryan Caulfield, Esquire (qibaret@usalaw.com)
T.R. Unice, Jr., Esquire (vengelson@unicesalzman.com)

IN THE CIRCUIT COURT FOR THE SIXTH
JUDICIAL CIRCUIT IN AND FOR PINELLAS
COUNTY, STATE OF FLORIDA - CIVIL DIVISION

CRISANTO C. OXONIAN,
as Personal Representative of the
ESTATE OF MARIA I. OXONIAN, Deceased,

     Plaintiff,

v.

Case Number: 07-009926CI-007

JESSICA LAUREN WICKY and
WILLIAM GILBERT STRICKLAND,

     Defendants.
_____/

## PROPOSED FINAL JUDGMENT AGAINST
## WILLAIM GILBERT STRICKLAND

     Pursuant to the Arbitration Verdict rendered on January 24, 2022, the Court adopts said verdict and enters judgment pursuant to the panel's verdict.

     Accordingly, it is hereby;

     **ADJUDGED** that **FINAL JUDGMENT** is hereby entered in favor of Plaintiff, CRISTANO C. OXONIAN, as personal representative of the ESTATE OF MARIA I. OXONIAN against WILLIAM GILBERT STRICKLAND, as provided below in accordance with the arbitration verdict and execution may issue, except as to William Gilbert Strickland which is subject to the Federal Bankruptcy Court, Order of Discharge dated July 21, 2020 in William Gilbert Strickland, Case No.: 15-30775, in the Western District of North Carolina.

1. The ESTATE OF MARIA I. OXONIAN is awarded the sum of $1,126,228.23 ($1,130,225.21 minus $17,630.08 for collateral sources).

2. CRISTANO C. OXONIAN is awarded the sum of $2,155,000.00.

3. CRISTIAN OXONIAN is awarded the sum of $850,0000.00.

4. KRISTEN OXONIAN is awarded the sum of $850,000.00.

00599043.DOCX

5. Interest on the above sums shall accrue at the rate of 5.525% as of the date of this Judgment, and shall be adjusted as provided by Florida Statute 55.03(1).

6. The Court hereby reserves jurisdiction to determine and award reasonable attorneys' fees.

7. That the recovery of any damages against William Gilbert Strickland is limited as set forth in the Federal Bankruptcy Court's September 15, 2015 Consent Order granting Limited Relief from Stay and the July 21, 2020 Order of Discharge, Case No. 15-30775. These orders are incorporated by reference and attached as exhibits to this Judgment.

8. The Court reserves jurisdiction to enter further orders that are proper, including without limitation, writs of execution, orders on proceedings supplementary, and all other post-judgment orders as may be appropriate.

      **DONE AND ORDERED** in chambers, Clearwater, Pinellas County, Florida this $28$ day of _____ March, 2023.

The Honorable Patricia A. Muscarella

TRUE COPY
ORIGINAL SIGNED
MAR 28 2023

Patricia A. Muscarella
PATRICIA A. MUSCARELLA
CIRCUIT JUDGE

Copies Furnished to:

Bryan Caulfied, Esquire (qibaret@usalaw.com)
T.R. Unice, Jr., Esquire (vengelson@unicesalzman.com)

Case 15-30775   Doc 21   Filed 09/15/15   Entered 09/15/15 09:57:39   Desc Main
Document   Page 1 of 2

FILED & JUDGMENT ENTERED
Steven T Salata

Sep 15 2015

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE:     .                      )
                                  )
WILLIAM GILBERT STRICKLAND,       )     Case No. 15-30775
SSN:   xxx-xx-9578                )     Chapter 13
                                  )
                  Debtor.         )
_____ )

**Consent Order Granting Limited Relief from Stay**

This matter is before the Court upon the Motion for Relief from Stay filed by Crisanto C.

Oxonian, as Personal Representative of the Estate of Maria I. Oxonian, Deceased (hereinafter,

the "Oxonian Estate") and the response thereto filed by the Debtor.  Based upon the consents

below, it is hereby ORDERED that the stay be, and hereby is, modified to allow the Oxonian

Estate to prosecute the case entitled *Crisanto C. Oxonian, as Personal Representative of the*

*Estate of Maria I. Oxonian, Deceased, Plaintiff vs. Jessica Lauren Wicky, Karen Smith*

*Strickland and William Gilbert Strickland,* Circuit Civil Case No. 07-009926-CI-007, in the

Circuit Court in and for Pinellas County, Florida and that recovery of any damage award be

limited to the Debtor's insurance carrier.   The ten-day stay period of Rule 4001(a)(3) of the

1

Federal Rules of Bankruptcy Procedure shall not apply.  The automatic stay under 11 U.S.C. §

362(a) otherwise remains in effect.

TO THE FOREGOING, WE CONSENT:

*/s/ Frederick L. Henderson, Jr.,*
Frederick L. Henderson, Jr., N.C. Bar # 43586
Sigmon & Henderson, PLLC
518 S. New Hope Road
Gastonia, NC  28054
Tel. 704.865.6265; Fax 704.874.1300
*Attorneys for the Debtor*

*/s/ G. Martin Hunter*
G. Martin Hunter, N.C. Bar # 13557
301 S. McDowell St.
Suite 1014
Charlotte, NC  28204
Tel. 704.377.8764 Fax 704.377.0590
*Attorney for Crisanto C. Oxonian,*
*Personal Representative of the*
*Estate of Maria I. Oxonian, Dec'd*

NO OBJECTION:

*/s/ Warren L. Tadlock*
Warren L. Tadlock, Chapter 13 Trustee

This Order has been signed electronically.
The Judge's signature and Court's seal
appear at the top of the Order.

United States Bankruptcy Court

2

| Information to identify the case: | | |
|---|---|---|
| Debtor 1 | **William Gilbert Strickland** | Social Security number or ITIN   xxx–xx–9578 |
| | First Name   Middle Name   Last Name | EIN   __-_____ |
| Debtor 2 (Spouse, if filing) | First Name   Middle Name   Last Name | Social Security number or ITIN   ____ EIN   __-_____ |
| United States Bankruptcy Court   Western District of North Carolina | | |
| Case number:   15–30775 | | |

## Order of Discharge

12/18

**IT IS ORDERED:** A discharge under 11 U.S.C. § 1328(a) is granted to:

William Gilbert Strickland
aka William G. Strickland

7/21/20

By the court: Laura T. Beyer
United States Bankruptcy Judge

---

### Explanation of Bankruptcy Discharge in a Chapter 13 Case

This order does not close or dismiss the case.

**Creditors cannot collect discharged debts**

This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

This order does not prevent debtors from paying any debt voluntarily. 11 U.S.C. § 524(f).

**Most debts are discharged**

Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts provided for by the chapter 13 plan.

In a case involving community property: Special rules protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.

**Some debts are not discharged**

Examples of debts that are not discharged are:

- ♦ debts that are domestic support obligations;

- ♦ debts for most student loans;

- ♦ debts for certain types of taxes specified in 11 U.S.C. §§ 507(a)(8)(C), 523(a)(1)(B), or 523(a)(1)(C) to the extent not paid in full under the plan;

For more information, see page 2>

Form 3180W                    Chapter 13 Discharge                    page 1

021675                                    30409021696019

♦ debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case;

♦ debts for restitution, or a criminal fine, included in a sentence on debtor's criminal conviction;

♦ some debts which the debtors did not properly list;

♦ debts provided for under 11 U.S.C. § 1322(b)(5) and on which the last payment or other transfer is due after the date on which the final payment under the plan was due;

♦ debts for restitution, or damages, awarded in a civil action against the debtor as a result of malicious or willful injury by the debtor that caused personal injury to an individual or the death of an individual; and

♦ debts for death or personal injury caused by operating a vehicle while intoxicated.

In addition, this discharge does not stop creditors from collecting from anyone else who is also liable on the debt, such as an insurance company or a person who cosigned or guaranteed a loan.

IN THE CIRCUIT COURT IN AND FOR PINELLAS COUNTY, FLORIDA
CASE NO.: 07-009926-CI-007

CRISANTO C. OXONIAN,
as Personal Representative of the
ESTATE OF MARIA I. OXONIAN, Deceased,

     Plaintiff,

vs.

JESSICA LAUREN WICKY
KAREN SMITH STRICKLAND and
WILLIAM STRICKLAND,

     Defendants.

_____/

### PLAINTIFF'S NOTICE OF SERVICE OF PROPOSAL FOR SETTLEMENT

     Plaintiff, CRISANTO C. OXONIAN, as Personal Representative of the ESTATE OF

MARIA I. OXONIAN, deceased, hereby gives notice that on the date indicated below, a

Proposal for Settlement was served on the Defendant, WILLIAM STRICKLAND, pursuant to

Fla. Stat. 768.79 and Fla. R. Civ. P. 1.442.

### CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that the a true copy of the foregoing were furnished Via Email  to

T.R. Unice, Esquire, Patriot Bank Building, Second Floor,1815 Little Road, Trinity, FL  34655

(Attorneys for Jessica Lauren Wicky and William Gilbert Strickland);

Exhibit "B" —

service@unicesalzman.com; jjensen@unicesalzman.com; kbidyk@unicesalzman.com; on this

1st day of May, 2015.

PERENICH, CAULFIELD, AVRIL & NOYES, P.A.

Bryan D. Caulfield, Esquire
FBN: 767530
1875 North Belcher Road, Suite 201
Clearwater, Florida 33765
Ph (727) 796-8282; Fax (727) 797-3667
Primary E-mail: Bryan@usalaw.com
Secondary E-mail: Qibaret@usalaw.com

IN THE CIRCUIT COURT IN AND FOR PINELLAS COUNTY, FLORIDA
CASE NO.: 07-009926-CI-007

CRISANTO C. OXONIAN,
as Personal Representative of the
ESTATE OF MARIA I. OXONIAN, Deceased,

     Plaintiff,

vs.

JESSICA LAUREN WICKY
KAREN SMITH STRICKLAND and
WILLIAM STRICKLAND,

     Defendants.
_____/

## PLAINTIFF, CRISANTO C. OXONIAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MARIA I. OXONIAN'S PROPOSAL FOR SETTLEMENT TO DEFENDANT, WILLIAM STRICKALND

COMES NOW, the Plaintiff, CRISANTO C. OXONIAN, as Personal Representative of the ESTATE OF MARIA I. OXONIAN, deceased, and serves the following Proposal of Settlement upon the Defendant, WILLIAM STRICKLAND.

1.    This Proposal of Settlement is made pursuant to Florida Rules of Civil Procedure 1.442, applicable Florida law, and Florida Statute §768.79.

2.    This Proposal of Settlement is made by Plaintiff, CRISANTO C. OXONIAN, as Personal Representative of the ESTATE OF MARIA I. OXONIAN, deceased, to the Defendant, WILLIAM STRICKLAND.

3.    This Proposal for Settlement is to resolve any and all claims for bodily injury and wrongful death Plaintiff has against Defendant, WILLIAM STRICKLAND, arising out of the cause of action which is the subject matter of the above-styled case.

4.    The amount of this proposal is Six Hundred Thousand Dollars and No Cents

($600,000.00) for Plaintiff's bodily injury and wrongful death claims.

5.      The relevant condition of this Proposal of Settlement is that it should not be construed as to release any other entity, or any other insurance policy with Defendant, WILLIAM STRICKLAND, besides that entity and policy listed specifically herein and Plaintiff shall sign a General Release, releasing only the Defendant, WILLIAM STRICKLAND.

6.      A further relevant condition of this Proposal of Settlement is that the above-referenced amount shall be paid to Plaintiff, CRISANTO C. OXONIAN, as Personal Representative of the ESTATE OF MARIA I. OXONIAN, deceased, within 30 days, and that no discharge of this stipulated amount shall be attempted by Defendant, WILLIAM STRICKLAND, in a bankruptcy proceeding or through any other means.

7.      Plaintiff's entitlement to punitive damages, if any, is incorporated into the proposed settlement offer.

8.      Plaintiff's entitlement to attorneys' fees and costs, is incorporated into the proposed settlement offer if accepted within thirty (30) days.

9.      Should Plaintiff, CRISANTO C. OXONIAN, as Personal Representative of the ESTATE OF MARIA I. OXONIAN, deceased, recover a judgment in an amount at least 25 percent greater than the offer in Paragraph Four (4) above, he shall be entitled to recover reasonable costs and attorney's fees incurred from the date of the filing of the demand.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the a true copy of the foregoing were furnished Via Email to T.R. Unice, Esquire, Patriot Bank Building, Second Floor,1815 Little Road, Trinity, FL  34655 (Attorneys for Jessica Lauren Wicky and William Gilbert Strickland);

service@unicesalzman.com; jjensen@unicesalzman.com; kbidyk@unicesalzman.com; on this

1ˢᵗ day of _May_, 2015.

PERENICH, CAULFIELD, AVRIL & NOYES, P.A.

_____ for
Bryan D. Caulfield, Esquire
FBN: 767530
1875 North Belcher Road, Suite 201
Clearwater, Florida 33765
Ph (727) 796-8282; Fax (727) 797-3667
Primary E-mail: Bryan@usalaw.com
Secondary E-mail: Qibaret@usalaw.com

## Qibaret T. Ismaili

**From:** Qibaret T. Ismaili
**Sent:** Friday, May 01, 2015 10:03 AM
**To:** service@unicesalzman.com; jjensen@unicesalzman.com; kbidyk@unicesalzman.com
**Subject:** SERVICE OF DOCUMENTS -OXONIAN VS WICKY -07-9926-CI-7
**Attachments:** Oxonian - Plt's N of Service of POS to William Strickland.pdf; Oxonian- Plt's N of Serving Proposal of Settlement.pdf

Pursuant to Florida Rule of Judicial Administration 2.516, attached please find a copy of Plaintiff's

Notice of Service of Proposal of Settlement.

Qibaret Ismaili, Legal Assistant to:
Bryan D. Caulfield, Esq.
Board Certified Civil Trial Lawyer
Perenich, Caulfield, Avril & Noyes, P.A.
1875 N. Belcher Road, Suite 201
Clearwater, FL 33765
(727)724-7835 direct
(727)797-3667 facsimile
Email: Qibaret@usalaw.com
Firm Website: www.usalaw.com
Personal Website: www.bryancaulfield.com

This file was created using eCopy Desktop. For information about how you can eCopy paper documents, visit www.ecopy.com. To view .cpy files, download the evaluation version of eCopy Desktop at www.ecopy.com/products/desktop_eval.asp

_ Exhibit "C"

**Qibaret T. Ismaili**

| | |
|---|---|
| From: | eservice@myflcourtaccess.com |
| Sent: | Friday, May 01, 2015 10:05 AM |
| Subject: | SERVICE OF COURT DOCUMENT - CASE NUMBER 522007CA009926XXCICI |
| Attachments: | Notice Of Service. Of Proposal For Settlement.pdf |

## Notice of Service of Court Documents

## Filing Information

| | |
|---|---|
| Filing #: | 26771836 |
| Filing Time: | 05/01/2015 10:04:31 AM ET |
| Filer: | Bryan David Caulfield 727-724-7879 |
| Court: | Sixth Judicial Circuit in and for Pinellas County, Florida |
| Case #: | 522007CA009926XXCICI |
| Court Case #: | 07-009926-CI |
| Case Style: | OXONIAN MARIA I ESTATE OF VS STRICKLAND, WILLIAM GILBERT |

## Documents

| Title | File |
|---|---|
| Notice Of Service. Of Proposal For Settlement | Oxonian- Plt's N of Serving Proposal of Settlen |

## E-service recipients selected for service:

| Name | Email Address |
|---|---|
| Andrew J. Salzman | service@unicesalzman.com |
| | mdidonna@unicesalzman.com |
| | asalzman@unicesalzman.com |
| Bryan David Caulfield | Qibaret@usalaw.com |
| | Bryan@usalaw.com |
| T R Unice Jr | service@unicesalzman.com |
| | llarsen@unicesalzman.com |
| | trunice@unicesalzman.com |

## E-service recipients deselected for service:

| Name | Email Address |
| --- | --- |
| No Matching Entries | |

This is an automatic email message generated by the Florida Courts E-Filing Portal. This email address does not receive email.

Thank you,
The Florida Courts E-Filing Portal

request_id#:26771836;Audit#:92144934;UCN#:522007CA009926XXCICI;