# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

CRISANTO C. OXONIAN, et al.,

    Plaintiffs,

vs.

GEICO GEN. INS. CO.,

    Defendant.

Case No. 8:24-cv-1351-MSS-AAS

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENEDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. 19) AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs, CRISANTO C. OXONIAN, as Personal Representative of the ESTATE OF MARIA I. OXONIAN, Deceased, CRISANTO C. OXONIAN, individually, CRISTIAN OXONIAN, and KRISTEN OXONIAN, by and through undersigned counsel, files this Response in Opposition to Defendant's Motion for Judgment on the Pleadings (Doc. 19).

    **I.    INTRODUCTION:**

GEICO raises a singular issue ripe for decision: whether substantive legislative changes to Florida insurance law enacted in 2023 control the rights of the Plaintiffs under GEICO's 2006 insurance contract.  The Florida legislature plainly stated its changes only apply to impair rights under an insurance contract issued or renewed <u>after</u> the effective date of the Act becoming law on March 24, 2023.  Moreover,

GEICO improperly relies upon facts not of record for purposes of its motion. Therefore, GEICO's motion is due to be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On September 18, 2006, GEICO issued a family automobile policy renewal naming Jessica Lauren Wicky as it insured. ("Policy") (Doc. 1-1 at 13). The policy term was November 11, 2006, to May 11, 2007, and declared liability limits were $10,000.00 per person and $20,000.00 per occurrence. (Doc. 12 at 2). On December 12, 2006, Ms. Wicky operated a motor vehicle she co-owned with Mr. Strickland. At that time, Ms. Wicky was involved in an accident resulting in the death of Ms. Oxonian. (Doc. 1-1 at 7; Doc. 12 at 3 at para 8). GEICO extended coverage under the Policy to both Ms. Wicky and Mr. Strickland. (Doc. 1-1 at 8; Doc. 12 at 3, para. 9).

GEICO failed to settle the Oxonian Florida Wrongful Death Act claims. Judgments in amounts exceeding the $10,000.00 Policy limit were entered against Ms. Wicky and Mr. Strickland on March 28 and April 26, 2023. (Doc. 1-1 at 8). Following the entry of the final judgments, Plaintiffs commenced this litigation asserting the right under the 2006 GEICO Policy to the remedies afforded at common law for bad faith. GEICO answered and asserted defenses that include 2023 changes to Florida law found at Florida Statute section 624.155(4)(a). (Fifth Affirmative Defense) (Doc. 12 at 8). In support of this defense, GEICO alleged new facts and documents not alleged nor admitted by Plaintiffs.

### III. ARGUMENT

The Plaintiffs' bad faith action is predicated upon a right under the 2006 GEICO Policy. Specifically, the right of Ms. Wicky and Mr. Strickland to be afforded a duty of good faith in defense and settlement of the Oxonian claim. As discussed below, this right to hold insurers responsible for bad faith has been a tenet of Florida common law since 1938. As judgment creditors, Plaintiffs stand in the insureds' shoes to enforce the insureds' right. GEICO claims absolute immunity for its bad faith relying solely upon 2023 legislative changes to Florida bad faith law as found at section 624.155(4)(a) Florida Statutes (2023). GEICO fails to advise this Court that when enacting these changes to the common law the legislature expressly stated:

> section 29. This act shall not be construed to impair any right under an insurance contract in effect on or before the effective date of this act. To the extent that this act affects a right under an insurance contract, this act applies to an insurance contract issued or renewed after the effective date of this act [March 24, 2023].

See Appendix 1. 624.155, Florida Statutes, passed in chapter 2023-15, Florida Laws (commonly known as HB 837). Under the plain language of the Act, the right to a good faith claim adjustment under the subject **2006** GEICO Policy shall not be impaired by section 624.155(4)(a). As section 624.155(4)(a) is argued to bar this action, it is clearly asserted to impair a right otherwise existing at common law under the insurance contract. By the plain language of the Act, HB 837 changes to Florida bad faith cannot be applied to this case. Thus, GEICO's motion must be denied.

### A. PLAINTIFFS' ACTION IS FOUNDED UPON A RIGHT UNDER THE 2006 POLICY.

GEICO cannot credibly dispute that the common law of bad faith is a right under an insurance contract that is impaired by the Act. Since at least 1938, Florida has required insurance companies handling liability claims to exercise the same "degree of care and diligence which a man of ordinary care and prudence should exercise in the management of his own business." Auto Mut. Indem. Co. v. Shaw, 184 So. 852, 859 (Fla. 1938). This duty of care is imposed by the insurance contract, which requires the insured to surrender to the insurance carrier all control over the handling of the claim, including all decisions regarding litigation and settlement. Boston Old Colony Ins. Co. v. Gutierrez, 386 So. 2d 783, 785 (Fla. 1980); see also Harvey v. GEICO Gen. Ins. Co., 259 So. 3d 1, 6 (Fla. 2018); Berges v. Infinity Ins. Co., 896 So. 2d 665, 682 (Fla. 2004).

"In exchange for this relinquishment of control over settlement and the conduct of the litigation, the insurer obligates itself to act in good faith in the investigation, handling, and settling of claims brought against the insured." Berges, 896 So. 2d at 3.

Encompassed within the insurer's overarching duty of good faith are several distinct duties, each of which serves the goal of protecting the insured from legal liability exceeding the indemnity limit. Boston Old Colony, 386 So. 2d at 785; Harvey, 259 So. 3d at 6-7. This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the

litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. Id. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so. Id. Because the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith. Harvey, 259 So. 3d at 6-7 (quoting Boston Old Colony, 386 So. 2d at 785) (emphasis added); see also Brink v. Direct Gen. Ins. Co., 38 F.4th 917, 922-23 (11th Cir. 2022) (holding the trial court reversibly erred by refusing to instruct the jury on these duties). However, these obligations "are not a mere checklist." Harvey, 259 So. 3d at 6. In other words,

> [a]n insurer is not absolved of liability simply because it advises its insured of settlement opportunities, the probable outcome of the litigation, and the possibility of an excess judgment. **Rather, the critical inquiry in a bad faith [case] is whether the insurer diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment.**

Id. at 7 (emphasis added); see also Brink, 38 F.4th at 922-23. It logically follows the "lack of a formal offer to settle does not preclude a finding of bad faith." Powell v. Prudential Prop. & Cas. Ins. Co., 584 So. 2d 12, 14 (Fla. Dist. Ct. App. 1991). Indeed,

> where liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations. In such a case, where the financial exposure to the insured is a ticking financial time bomb and suit can be filed at any time, any delay in making an offer under the circumstances of this case even where there was no assurance that the claim could be settled could be viewed by a fact finder as evidence of bad faith.

5

Harvey, 259 So. 3d at 7 (cleaned up, citations omitted).

Moreover, "[The insurer's] ultimate tender of the policy limits does not automatically insulate an insurer from liability for bad faith." Powell, 584 So. 2d at 15. Ultimately, "it is for the jury to decide whether the insurer failed to 'act in good faith with due regard for the interests of the insured.'" Harvey, 259 So. 3d at 7 (quoting Boston Old Colony, 386 So. 2d at 785).

If the insurer breaches one or more of its good faith duties when handling a liability claim, resulting in an excess judgment against the insured, the insurer is liable for the entire judgment, including any accrued interest thereon. See State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So. 2d 55, 58 (Fla. 1995) (noting that in third-party bad faith actions, "if an insurer was found to have acted in bad faith, the insurer would have to pay the entire judgment entered against the insured in favor of the injured third party, including any amount in excess of the insured's policy limits"); Venn v. St. Paul Fire & Marine Ins. Co., 99 F.3d 1058, 1068 (11th Cir. 1996) (applying Florida bad faith law and holding an insurer found to have acted in bad faith must pay not only the amount of the final judgment but also prejudgment interest).

The right to hold insurers to a duty of good faith and remedy for its breach *as it existed in September of 2006* is a term of the GEICO insurance contract imposed by operation of law. See Shavers v. Duval Cnty., 73 So. 2d 684, 689 (Fla. 1954) ("It has long been firmly established that the laws existing at the time and place of the making of the contract and where it is to be performed which may affect its validity,

construction, discharge and enforcement, enter into and become a part of the contract as if they were expressly referred to or actually copied or incorporated therein."); Lanza v. Damian Carpentry, Inc., 6 So. 3d 674, 676 (Fla. Dist. Ct. App. 2009) ("Contracts are made in legal contemplation of the existing applicable law.").

As the Florida Supreme Court explained 55 years ago, the insurer's contractual duty to defend "justifies an implication that the insurer will exercise ordinary care and good faith" in handling the claim. Nationwide Mut. Ins. Co. v. McNulty, 229 So. 2d 585, 86 (Fla. 1969) (internal citation omitted). "This obligation of good faith is implied in the contract because the insurer has taken over the entire defense of the matter and, in most contracts, the insured is prohibited from interfering in any manner with the litigation and settlement." N. Am. Van Lines, Inc. v. Lexington Ins. Co., 678 So. 2d 1325, 1330 (Fla. Dist. Ct. App. 1996) (emphasis added); see also Allstate Ins. Co. v. Regar, 942 So. 2d 969, 972 (Fla. Dist. Ct. App. 2006) ("**The duty of good faith is a contractual duty**, and an action for its breach is governed by contract law.") (emphasis added). Thus, although the damages recoverable in a bad faith case are "extracontractual" in nature (meaning for an amount above the policy limits), the duty which is breached is "a contractual obligation implied in law, namely good faith." N. Am. Van Lines, 678 So. 2d at 1330.

**B.     PLAINTIFFS HAVE STANDING TO ASSERT THE INSUREDS RIGHT.**

Plaintiffs, who are not parties to the contract, nevertheless have standing as third-party beneficiaries to sue for damages *suffered by the insured* because of the insurer's bad faith failure to settle. Thompson v. Com. Union Ins. Co. of N.Y., 250 So. 2d 259, 261 (Fla. 1971). Under such circumstances, Plaintiffs "stand in the shoes" of the insured to enforce *the insured's rights*. See Wilder v. Wright, 278 So. 2d 1, 2-3 (Fla. 1973).

### C. SECTION 624.155(4)(A) IMPAIRS THE RIGHT TO GOOD FAITH CLAIM HANDLING AND REMEDIES FOR ITS BREACH.

Prior to HB 837, no portion of section 624.155, Florida Statutes, applied to common law bad faith claims. See Fla. Stat. § 624.155(8) (2022) ("The civil remedy specified in this section does not preempt any other remedy or cause of action provided for pursuant to any other statute or pursuant to the common law of this state."). However, HB 837 created new insurer immunities and defenses regarding bad faith claims. Relevant to GEICO's Fifth Affirmative Defenses and, in turn, this motion is section 624.155(4)(a):

> (4)(a) An action for bad faith involving a liability insurance claim, including any such action brought under the common law, shall not lie if the insurer tenders the lesser of the policy limits or the amount demanded by the claimant within 90 days after receiving actual notice of a claim which is accompanied by sufficient evidence to support the amount of the claim.

Thus, in those third-party bad faith actions where HB 837 applies, the insurer is *immune* if it tenders the applicable policy limits "within 90 days after receiving actual notice of a claim which is accompanied by sufficient evidence to support the amount

8

of the claim." Id. This new immunity would apply even if the insurer failed to settle the liability claim in bad faith before the expiration of the 90-day period. The statutory immunity, when applicable, eliminates the requirement that an insurer act with all haste and diligence due in affirmatively investigating the facts of the covered loss and then seeking out a settlement when it could and should do so while acting fairly and honestly and with due regard for the insured's interests. Instead, the insurer is statutorily protected while it sits back and awaits an actual notice "accompanied by" sufficient evidence to support a claim payment. Insureds under the contract no longer have a right to prompt and fair claim service under the insurance contract.

The material impairment of section 624.155(4)(a) is vividly obvious when examined under prior law where the liability insurer's bad faith was predicated on its failure to affirmatively offer to settle the liability claim in a timely manner after it knew or should have known the insured was facing a "ticking financial time bomb." See, e.g., Powell, 584 So. 2d at 13-15 (holding a reasonable jury could find the liability insurer acted in bad faith by not tendering the policy limits sooner, where it was first offered 62 days after the accident); Ilias v. USAA Gen. Indem. Co., 61 F.4th 1338, 1345-47 (11th Cir. 2023) (holding a reasonable jury could find the liability insurer was liable for bad faith failure to settle because of its undue delay in initiating settlement negotiations, where insurer first offered to settle for the liability limits 48 days after the accident); Bannon v. GEICO Gen. Ins. Co., 743 F. App'x 311, 313 (11th Cir. 2018) (affirming jury verdict in favor of the plaintiff in the bad faith action, and against

9

GEICO, where GEICO first offered to settle for the policy limits 26 days after the accident).

Considering these authorities, it is obvious the amendment to section 624.155(4)(a), "affect[s] right[s] under an insurance contract." As explained above, section 624.155(4)(a), when applicable, does not merely impair the right to good faith claim handling in matters of settlement, it prohibits enforcement of this right. "Nothing can be more material to the obligation [of contract] than the means of enforcement." Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 430 (1934); see also, e.g., Gen. Motors Corp. v. Romein, 503 U.S. 181, 189 (1992) ("If any subsequent law affects to diminish the duty, or to impair the right, it necessarily bears on the obligation of the contract. A change in the remedies available under a contract, for example, may convert an agreement enforceable at law into a mere promise, thereby impairing the contract's obligatory force.") (quotations and citations omitted). Thus, if HB 837's amendments were to apply to Plaintiffs' insurance bad faith claims, then those amendments would affect contractual rights and obligations written into a policy issued *years before* the effective date of the legislation. That directly contradicts the "clear expression" by the Legislature in Section 29: that the amendments that impair a right under the insurance contract should *not* apply where the subject policy was issued before the effective date. In sum, the legislative directive in Section 29 prohibits this Court from applying the HB 837 amendment found at section 624.155(4)(a) in this case because the changes "affect a right under an insurance contract."

10

### D.   APPLYING SECTION 624.155(4)(A) TO POLICIES ISSUED BEFORE THE EFFECTIVE DATE OF THE ACT WOULD VIOLATE THE FLORIDA AND U.S. CONSTITUTIONS.

Even if the legislature had not clearly expressed preservation of rights under an existing insurance contract by section 29's language, the Act would be unconstitutional if sought to be applied to impair contract rights in existence at the time of its passage. Under Menendez v. Progressive Express insurance Company, a statute may be applied retroactively only if, (1) there is a clear legislative intent to do so; and (2) the application does not violate constitutional rights. 35 So. 3d 873, 876 (Fla. 2010). The first prong of the Menendez test cannot be met, as section 29 plainly states that the Act's impairment of the right to good faith claim handling is to be applied only to insurance contracts issued or renewed after March 24, 2023. This Court must not disregard this plain language of section 29. Under the Menendez test, only where there is a clear legislative expression of retroactive application does the Court next evaluate whether doing so is unconstitutional. See Old Port Cove Holdings, Inc. v. Old Port Cove Condo. Ass'n One, Inc., 986 So. 2d 1279, 1284 (Fla. 2008) ("We conclude that the plain language of [the statute] does not evince an intent that the statute apply retroactively. We therefore need not address the second prong.").

However, assuming *arguendo* the Court reaches the constitutional questions, then it should find that applying section 624.155(4)(a) to insurance contracts issued before the effective date would violate the due process and contracts clauses of the Florida and U.S. Constitutions. See Fla. Const. art. I, §§ 9 and 10; U.S. Const. amend. XIV § 1. Although the analysis regarding potential due process and contracts clause

11

violations are often intertwined, they are "separate considerations requiring separate analyses." Ferretti v. Nova Se. Univ., Inc., 586 F. Supp. 3d 1260, 1271 n.6 (S.D. Fla. 2022) (citing Menendez, 35 So. 3d at 877, n.4). Plaintiffs, as third-party beneficiaries of the contract between GEICO and its insured,[1] step into the insured's shoes and thus have standing to challenge GEICO's efforts to apply the new statute in an unconstitutional manner. See Pudlit 2 Joint Venture, LLP v. Westwood Gardens Homeowners Ass'n, Inc., 169 So. 3d 145, 150 (Fla. Dist. Ct. App. 2015) ("A third-party beneficiary to a contract possesses the same constitutional right against the impairment of that contract as the parties to the contract."); Boston Old Colony Ins. Co. v. Gutierrez, 325 So. 2d 416, 417 (Fla. Dist. Ct. App. 1976) ("As a third party beneficiary of the insurance policy, Gutierrez [the injured claimant] stands in the same posture as that of Brown, the insured"); see also Shingleton v. Bussey, 223 So. 2d 713, 716-18 (Fla. 1969) (recognizing, in an analogous situation, that a liability insurer cannot enforce a policy provision against the injured third-party beneficiary if doing so would violate the third-party beneficiary's due process rights).

**i.** *Due Process*

Even when the Legislature expressly states a new statute is to have retroactive application, courts will refuse to apply it retroactively "if the statute impairs a vested right, creates a new obligation, **or** imposes a new penalty." Menendez, 35 So. 3d at

---

[1] Thompson, 250 So. 2d at 263. Whether there is a legally enforceable right under state law sufficient to confer standing is determined by state law. See Bochese v. Town of Ponce Inlet, 405 F.3d 964, 981 (11th Cir. 2005).

12

877 (emphasis added); see also, e.g., Metro. Dade Cnty. v. Chase Fed. Hous. Corp., 737 So. 2d 494, 503 (Fla. 1999) (holding statutes cannot be applied retrospectively "in those cases wherein vested rights are adversely affected or destroyed or when a new obligation or duty is created or imposed, or an additional disability is established, on connection with transactions or considerations previously had or expiated"); Landgraf v. USI Film Prods., 511 U.S. 244, 266, 280 (1994) (noting a statute has retroactive effect, thereby causing due process concerns, when "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed"). Thus, pursuant to both federal and Florida's due process clauses, a statute cannot be applied to an insurance policy issued before its effective date if application of the new statute would (1) impair vested rights, (2) create new obligations or duties, *or* (3) impose a new disability or penalty.

"The inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment.'" Martin v. Hadix, 527 U.S. 343, 357-58 (1999) (internal citations omitted). "This judgment should be informed and guided by 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" Id. (internal citations omitted). The insureds and third-party beneficiaries had a vested contractual right to require GEICO to handle the liability claim in good faith at the time the policy was issued (or at the latest when the loss occurred and the claim was submitted). See Bay Farms Corp. v. Great Am. All. Ins.

Co., 835 F. Supp. 2d 1227, 1242 (M.D. Fla. 2011) (declining to apply 2011 statutory amendment defining "structural damages" to 2008 policy providing sinkhole coverage, in lawsuit filed after 2011 amendment, where application of the new statute would impair the insured's vested right to insurance coverage for sinkhole losses and "severely, permanently, and immediately change the parties' economic relationship"). HB 837's amendments at section 624.155(4)(a) clearly violate the second and third prongs of the due process analysis because they create new "obligations or duties" and impose new "disabilities or penalties" for insureds and third-party beneficiaries of liability insurance policies.

As explained above, newly enacted section 624.155(4) completely *immunizes* a liability insurer from any bad faith failure to settle if it tenders the policy limits within the first 90 days of receiving actual notice of the claim and sufficient evidence to support the amount of the claim. Compare Powell, 584 So. 2d at 15 (noting that an insurer's "tender of the policy limits does not automatically insulate an insurer from liability for bad faith"). This 90-day immunity period also encourages liability insurers to delay their investigation, evaluation, and attempted settlement of liability claims. Compare Powell, 584 So. 2d at 13-15; Ilias, 61 F.4th at 1345-47; Bannon, 743 F. App'x at 313. Therefore, section 624.155(4) impairs the rights of and creates new disabilities for insureds and third-party beneficiaries.

For those reasons, the due process clauses of the Florida and U.S. Constitutions prohibit retroactive application of section 624.155(4) to a policy issued over sixteen years earlier.

**ii.** *Impairment of obligation of contracts*

In addition to due process, "[r]etroactivity will also be rejected where a statute impairs the obligation of contracts in violation of article I, section 10, of the Florida Constitution." Menendez, 35 So. 3d at 878 n.4 (citing Fleeman, 342 So. 2d at 818); see also R.A.M. of S. Fla. v. WCI Communities, 869 So. 2d 1210, 1217 (Fla. Dist. Ct. App. 2004) ("Where contract rights are involved, the invalidation of the retroactive application of civil legislation may be based on the conclusion that the legislation impairs the obligation of contract."). When analyzing whether this section of the Florida Constitution has been violated, "federal courts are required to construe the Florida Constitution as would the Supreme Court of Florida." Geary Distrib. Co., Inc. v. All Brand Importers, Inc., 931 F.2d 1431, 1434 (11th Cir. 1991) (cleaned up).

It has long been a "well-accepted principle that virtually no degree of contract impairment is tolerable in [Florida]." Pomponio v. Claridge of Pompano Condo., Inc., 378 So. 2d 774, 780 (Fla. 1979). It is equally well-established that any "subsequent legislation which diminishes the value of a contract is repugnant to [Florida's] Constitution." Dewberry v. Auto-Owners Ins. Co., 363 So. 2d 1077, 1080 (Fla. 1978).[2]

---

[2] "Florida courts interpreting the Florida contract clause appear to tolerate less impairment than the federal courts interpreting the federal contract clause." Geary Distrib. Co., 931 F.2d at 1434 n.4. Thus, to avoid engaging in needless academic discussion, Plaintiffs will not address whether section 624.155, as amended, would also violate the federal contract clause.

15

Guided by these principles, Florida law provides that a new law impermissibly impairs a preexisting contract if it has "the effect of rewriting antecedent contracts in a manner that changes the substantive rights of the parties to existing contracts." Searcy, Denney, Scarola, Barnhart & Shipley, etc. v. State, 209 So. 3d 1181, 1190–91 (Fla. 2017) (cleaned up). To avoid changing the substantive rights of the parties to insurance contracts, courts generally apply the laws in effect at the time the contract was issued. See Hassen, 674 So. 2d at 108; see also State Farm Mut. Auto. Ins. Co. v. Hassen, 650 So. 2d 128, 134 (Fla. Dist. Ct. App. 1995) ("[I]n order to prevent the impairment of an insurance contract, Florida law generally requires that 'the statute in effect at the time the insurance contract is executed governs any issues arising under the contract.'") (internal citations omitted), approved, 674 So. 2d 106 (Fla. 1996).

As discussed at length above, section 624.155(4)(a) is a new law that severely limits the right of insureds and third-party beneficiaries to hold liability insurers accountable for certain breaches of the common law good faith duties, which were incorporated into every pre-HB 837 policy upon issuance as a matter of law. Thus, there can be no serious dispute that the new laws, passed in March 2023, "have the effect of rewriting" the September 2006 liability policy "in a manner that changes the substantive rights of the parties to existing contracts," thereby diminishing the value of the contract. See Searcy, Denney, 209 So. 3d at 1190-91; Dewberry, 363 So. 2d at 1080.

As such, section 624.155(4)(a) cannot be constitutionally applied to this case (or any other case arising out of a liability policy issued on or before March 24, 2023). See, e.g., Dewberry, 363 So. 2d at 1079-80 (holding it would violate the contracts clause to apply a new statute which prohibited stacking of UM coverages to policies issued before the effective date); Lumbermens Mut. Cas. Co. v. Ceballos, 440 So. 2d 612, 613 (Fla. Dist. Ct. App. 1983) (holding application of a new law to a policy issued before the effective date "would constitute a legislative impairment of contract in violation of article I, section 10 of the Florida Constitution" where the effect of the new law was to impose an additional obligation on a PIP insurer and hold them liable for additional benefits if it failed to comply with the new obligation).

### E. THE MOTION FOR JUDGMENT ON THE PLEADINGS IMPROPERLY RELIES UPON FACTS NOT ESTABLISHED BY THIS RECORD.

Even if HB 837 applies to this case – and it does not – the instant motion is procedurally defective. When deciding a defendant's motion for judgment on the pleadings the Court is required to look only upon the pleadings for the facts as alleged and must accept the facts as alleged in the complaint as true and view them in the light most favorable to the nonmoving party. See Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014) (citing Cannon v. City of W. Palm Beach, 250 F.3d 1299, 1301 (11th Cir.2001); Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir.1998)). GEICO's motion relies upon the facts contained in its Answer and Affirmative defenses. The Plaintiff did not reply to the affirmative defenses and the facts therein are deemed denied. Caruso v. Golden Rule Ins. Co., 13-60405-CIV, 2013

17

WL 5596030, at *4 (S.D. Fla. Oct. 11, 2013) ("if a responsive pleading is not required, all affirmative defenses are deemed to be denied or avoided."). Therefore, the facts necessary to prove application of section 624.155(4)(a) (a Policy limit tender within the 90-day period) are not properly of record for this Court's consideration. Consideration of facts alleged by GEICO in its Answer and Affirmative Defenses is improper. Perez, 774 F.3d at 1335 ("If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied."). Consequently, the record is not ripe for a final determination of the merits of GEICO's immunity defense. On this ground alone, the motion should be denied.

Dated: September 16, 2024

Respectfully submitted,

*s/* Lee D. Gunn IV, Esq.
Lee D. Gunn IV, Esq.
Florida Bar No. 367192
lgunn@gunnlawgroup.com
L. Delton Gunn V, Esq.
Florida Bar No.: 1038889
dgunn@gunnlawgroup.com
kfisher@gunnlawgroup.com
efile@gunnlawgroup.com
**GUNN LAW GROUP, P.A.**
401 East Jackson Street, Suite 3600
Tampa, FL 33602
(813) 228-7070 TELEPHONE
(813) 228-9400 FACSIMILE
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on this 16th day of September, 2024, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court through the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*s/ Lee D. Gunn IV, Esq.*
Lee D. Gunn IV, Esq.
