# CHAPTER 2023-15

Committee Substitute for

Committee Substitute for House Bill No. 837

An act relating to civil remedies; amending s. 57.104, F.S.; creating a rebuttable presumption that a lodestar fee is a sufficient and reasonable attorney fee in most civil actions; providing an exception; creating s. 86.121, F.S.; authorizing a court to award attorney fees in certain declaratory actions; prohibiting the transfer, assignment, or acquisition of the right to such attorney fees except by specified persons; providing applicability; amending s. 95.11, F.S.; reducing the statute of limitations for negligence actions; providing applicability of certain provisions to actions involving servicemembers; amending s. 624.155, F.S.; providing standards for bad faith actions; providing for the distribution of proceeds when two or more third-party claims arising out of a single occurrence exceed policy limits; creating s. 624.1552, F.S.; providing for applicability of specified offer of judgement provisions to civil actions involving insurance contracts; creating s. 768.0427, F.S.; providing definitions; providing standards for the admissibility of evidence to prove the cost of damages for medical expenses in certain civil actions; requiring certain disclosures with respect to claims for medical expenses for treatment rendered under letters of protection; specifying the damages that may be recovered by a claimant for the reasonable and necessary cost of medical care; creating s. 768.0701, F.S.; requiring the trier of fact to consider the fault of certain persons who contribute to an injury; creating s. 768.0706, F.S.; providing definitions; providing that the owner or principal operator of a multifamily residential property which substantially implements specified security measures on that property has a presumption against liability for negligence in connection with certain criminal acts that occur on the premises; requiring the Florida Crime Prevention Training Institute of the Department of Legal Affairs to develop a proposed curriculum or best practices for owners or principal operators; providing construction; amending s. 768.81, F.S.; providing that a party in a negligence action who is at fault by a specified amount may not recover damages under a comparative negligence action; providing applicability; repealing ss. 626.9373 and 627.428, F.S., relating to attorney fees awarded against surplus lines insurers and insurers, respectively; amending s. 627.756, F.S.; providing for the award of costs and attorney fees in certain actions; amending ss. 475.01, 475.611, 517.191, 624.123, 624.488, 627.062, 627.401, 627.441, 627.727, 627.736, and 628.6016, F.S.; conforming provisions to changes made by the act; repealing ss. 631.70 and 631.926, F.S., relating to attorney fees; amending s. 632.638, F.S.; conforming provisions to changes made by the act; providing a directive to the Division of Law Revision; providing applicability and construction; providing an effective date.

Be It Enacted by the Legislature of the State of Florida:

Section 1.   Section 57.104, Florida Statutes, is amended to read:

57.104   Computation of attorney attorneys' fees.—

(1)   In any action in which attorney attorneys' fees are to be determined or awarded by the court, the court shall consider, among other things, time and labor of any legal assistants who contributed nonclerical, meaningful legal support to the matter involved and who are working under the supervision of an attorney. For purposes of this section "legal assistant" means a person, who under the supervision and direction of a licensed attorney engages in legal research, and case development or planning in relation to modifications or initial proceedings, services, processes, or applications; or who prepares or interprets legal documents or selects, compiles, and uses technical information from

references such as digests, encyclopedias, or practice manuals and analyzes and follows procedural problems that involve independent decisions.

(2)  In any action in which attorney fees are determined or awarded by the court, there is a strong presumption that a lodestar fee is sufficient and reasonable. This presumption may be overcome only in a rare and exceptional circumstance with evidence that competent counsel could not otherwise be retained.

Section 2.   Section 86.121, Florida Statutes, is created to read:

86.121   Attorney fees; actions for declaratory relief to determine insurance coverage after total coverage denial of claim.—

(1)  In an action brought for declaratory relief in state or federal court to determine insurance coverage after the insurer has made a total coverage denial of a claim:

(a)  Either party is entitled to the summary procedure provided in s. 51.011, and the court shall advance the cause on the calendar.

(b)  The court shall award reasonable attorney fees to the named insured, omnibus insured, or named beneficiary under a policy issued by the insurer upon rendition of a declaratory judgment in favor of the named insured, omnibus insured, or named beneficiary. This right may not be transferred to, assigned to, or acquired in any other manner by anyone other than a named or omnibus insured or a named beneficiary. A defense offered by an insurer pursuant to a reservation of rights does not constitute a coverage denial of a claim. Such fees are limited to those incurred in the action brought under this chapter for declaratory relief to determine coverage of insurance issued under the Florida Insurance Code.

(2)  This section does not apply to any action arising under a residential or commercial property insurance policy.

Section 3.   Subsections (3), (4), and (10) of section 95.11, Florida Statutes, are amended, and subsection (12) is added to that section, to read:

95.11   Limitations other than for the recovery of real property.—Actions other than for recovery of real property shall be commenced as follows:

(3)  WITHIN FOUR YEARS.—

(a)  An action founded on negligence.

(a)(b)  An action relating to the determination of paternity, with the time running from the date the child reaches the age of majority.

(b)(c)  An action founded on the design, planning, or construction of an improvement to real property, with the time running from the date of actual possession by the owner, the date of the issuance of a certificate of occupancy, the date of abandonment of construction if not completed, or the date of completion of the contract or termination of the contract between the professional engineer, registered architect, or licensed contractor and his or her employer, whichever date is latest; except that, when the action involves a latent defect, the time runs from the time the defect is discovered or should have been discovered with the exercise of due diligence. In any event, the action must be commenced within 10 years after the date of actual possession by the owner, the date of the issuance of a certificate of occupancy, the date of abandonment of construction if not completed, or the date of completion of the contract or termination of the contract between the professional engineer, registered architect, or licensed contractor and his or her employer, whichever date is latest. However, counterclaims, cross-claims, and third-party claims that arise out of the conduct, transaction, or occurrence set out or attempted to be set out in a pleading may be commenced up to 1

year after the pleading to which such claims relate is served, even if such claims would otherwise be time barred. With respect to actions founded on the design, planning, or construction of an improvement to real property, if such construction is performed pursuant to a duly issued building permit and if a local enforcement agency, state enforcement agency, or special inspector, as those terms are defined in s. 553.71, has issued a final certificate of occupancy or certificate of completion, then as to the construction which is within the scope of such building permit and certificate, the correction of defects to completed work or repair of completed work, whether performed under warranty or otherwise, does not extend the period of time within which an action must be commenced. Completion of the contract means the later of the date of final performance of all the contracted services or the date that final payment for such services becomes due without regard to the date final payment is made.

(c)(d)  An action to recover public money or property held by a public officer or employee, or former public officer or employee, and obtained during, or as a result of, his or her public office or employment.

(d)(e)  An action for injury to a person founded on the design, manufacture, distribution, or sale of personal property that is not permanently incorporated in an improvement to real property, including fixtures.

(e)(f)  An action founded on a statutory liability.

(f)(g)  An action for trespass on real property.

(g)(h)  An action for taking, detaining, or injuring personal property.

(h)(i)  An action to recover specific personal property.

(i)(j)  A legal or equitable action founded on fraud.

(j)(k)  A legal or equitable action on a contract, obligation, or liability not founded on a written instrument, including an action for the sale and delivery of goods, wares, and merchandise, and on store accounts.

(k)(l)  An action to rescind a contract.

(l)(m)  An action for money paid to any governmental authority by mistake or inadvertence.

(m)(n)  An action for a statutory penalty or forfeiture.

(n)(o)  An action for assault, battery, false arrest, malicious prosecution, malicious interference, false imprisonment, or any other intentional tort, except as provided in subsections (4), (5), and (7).

(o)(p)  Any action not specifically provided for in these statutes.

(p)(q)  An action alleging a violation, other than a willful violation, of s. 448.110.

(4)   WITHIN TWO YEARS.—

(a)   An action founded on negligence.

(b)(a)  An action for professional malpractice, other than medical malpractice, whether founded on contract or tort; provided that the period of limitations shall run from the time the cause of action is discovered or should have been discovered with the exercise of due diligence. However, the limitation of actions herein for professional malpractice shall be limited to persons in privity with the professional.

(c)(b)  An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued, except that this 4-year period shall not bar an action

brought on behalf of a minor on or before the child's eighth birthday. An "action for medical malpractice" is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of health care. The limitation of actions within this subsection shall be limited to the health care provider and persons in privity with the provider of health care. In those actions covered by this paragraph in which it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the injury the period of limitations is extended forward 2 years from the time that the injury is discovered or should have been discovered with the exercise of due diligence, but in no event to exceed 7 years from the date the incident giving rise to the injury occurred, except that this 7-year period shall not bar an action brought on behalf of a minor on or before the child's eighth birthday. This paragraph shall not apply to actions for which ss. 766.301-766.316 provide the exclusive remedy.

(d)(c)   An action to recover wages or overtime or damages or penalties concerning payment of wages and overtime.

(e)(d)   An action for wrongful death.

(f)(e)   An action founded upon a violation of any provision of chapter 517, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, but not more than 5 years from the date such violation occurred.

(g)(f)   An action for personal injury caused by contact with or exposure to phenoxy herbicides while serving either as a civilian or as a member of the Armed Forces of the United States during the period January 1, 1962, through May 7, 1975; the period of limitations shall run from the time the cause of action is discovered or should have been discovered with the exercise of due diligence.

(h)(g)   An action for libel or slander.

(10)   FOR INTENTIONAL TORTS RESULTING IN DEATH FROM ACTS DESCRIBED IN S. 782.04 OR S. 782.07.—Notwithstanding paragraph (4)(e) (4)(d), an action for wrongful death seeking damages authorized under s. 768.21 brought against a natural person for an intentional tort resulting in death from acts described in s. 782.04 or s. 782.07 may be commenced at any time. This subsection shall not be construed to require an arrest, the filing of formal criminal charges, or a conviction for a violation of s. 782.04 or s. 782.07 as a condition for filing a civil action.

(12)   FOR ACTIONS INVOLVING SERVICEMEMBERS.—Any action involving a servicemember as defined in s. 250.01, in which the servicemember is a party, is subject to s. 250.5201 and part IV of chapter 250, which includes the Servicemembers Civil Relief Act, 50 U.S.C. ss. 501 et seq., providing for protections to members of the United States Armed Forces, the United States Reserve Forces, or the National Guard during terms of federal or state active duty which materially affect the servicemember's ability to appear.

Section 4.   Section 624.155, Florida Statutes, is amended to read:

624.155   Civil remedy.—

(1)   Any person may bring a civil action against an insurer when such person is damaged:

(a)   By a violation of any of the following provisions by the insurer:

1.   Section 626.9541(1)(i), (o), or (x);

2.   Section 626.9551;

3.   Section 626.9705;

4.   Section 626.9706;

   5.  Section 626.9707; or

   6.  Section 627.7283.

   (b)  By the commission of any of the following acts by the insurer:

   1.  Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests;

   2.  Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made; or

   3.  Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

Notwithstanding the provisions of the above to the contrary, a person pursuing a remedy under this section need not prove that such act was committed or performed with such frequency as to indicate a general business practice.

   (2)  Any party may bring a civil action against an unauthorized insurer if such party is damaged by a violation of s. 624.401 by the unauthorized insurer.

   (3)(a)  As a condition precedent to bringing an action under this section, the department and the authorized insurer must have been given 60 days' written notice of the violation. Notice to the authorized insurer must be provided by the department to the e-mail address designated by the insurer under s. 624.422.

   (b)  The notice shall be on a form provided by the department and shall state with specificity the following information, and such other information as the department may require:

   1.  The statutory provision, including the specific language of the statute, which the authorized insurer allegedly violated.

   2.  The facts and circumstances giving rise to the violation.

   3.  The name of any individual involved in the violation.

   4.  Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

   5.  A statement that the notice is given in order to perfect the right to pursue the civil remedy authorized by this section.

   (c)  No action shall lie if, within 60 days after the insurer receives notice from the department in accordance with this subsection, the damages are paid or the circumstances giving rise to the violation are corrected.

   (d)  The authorized insurer that is the recipient of a notice filed pursuant to this section shall report to the department on the disposition of the alleged violation.

   (e)  The applicable statute of limitations for an action under this section shall be tolled for a period of:

   1.  Sixty days after the insurer receives from the department the notice required by this subsection.

   2.  Sixty days after the date appraisal is invoked pursuant to paragraph (f).

(f)  A notice required under this subsection may not be filed within 60 days after appraisal is invoked by any party in a residential property insurance claim.

(4)(a)  An action for bad faith involving a liability insurance claim, including any such action brought under the common law, shall not lie if the insurer tenders the lesser of the policy limits or the amount demanded by the claimant within 90 days after receiving actual notice of a claim which is accompanied by sufficient evidence to support the amount of the claim.

(b)  If an insurer does not tender the lesser of the policy limits or the amount demanded by the claimant within the 90-day period provided in paragraph (a), the existence of the 90-day period and that no bad faith action could lie had the insurer tendered the lesser of policy limits or the amount demanded by the claimant pursuant to paragraph (a) is inadmissible in any action seeking to establish bad faith on the part of the insurer.

(c)  If the insurer fails to tender pursuant to paragraph (a) within the 90-day period, any applicable statute of limitations is extended for an additional 90 days.

(5)  In any bad faith action, whether such action is brought under this section or is based on the common-law remedy for bad faith:

(a)  Mere negligence alone is insufficient to constitute bad faith.

(b)1.  The insured, claimant, and representative of the insured or claimant have a duty to act in good faith in furnishing information regarding the claim, in making demands of the insurer, in setting deadlines, and in attempting to settle the claim. This duty does not create a separate cause of action, but may only be considered pursuant to subparagraph 2.

2.  In any action for bad faith against an insurer, the trier of fact may consider whether the insured, claimant, or representative of the insured or claimant did not act in good faith pursuant to this paragraph, in which case the trier of fact may reasonably reduce the amount of damages awarded against the insurer.

(6)  If two or more third-party claimants have competing claims arising out of a single occurrence, which in total may exceed the available policy limits of one or more of the insured parties who may be liable to the third-party claimants, an insurer is not liable beyond the available policy limits for failure to pay all or any portion of the available policy limits to one or more of the third-party claimants if, within 90 days after receiving notice of the competing claims in excess of the available policy limits, the insurer complies with either paragraph (a) or paragraph (b).

(a)  The insurer files an interpleader action under the Florida Rules of Civil Procedure. If the claims of the competing third-party claimants are found to be in excess of the policy limits, the third-party claimants are entitled to a prorated share of the policy limits as determined by the trier of fact. An insurer's interpleader action does not alter or amend the insurer's obligation to defend its insured.

(b)  Pursuant to binding arbitration that has been agreed to by the insurer and the third-party claimants, the insurer makes the entire amount of the policy limits available for payment to the competing third-party claimants before a qualified arbitrator agreed to by the insurer and such third-party claimants at the expense of the insurer. The third-party claimants are entitled to a prorated share of the policy limits as determined by the arbitrator, who must consider the comparative fault, if any, of each third-party claimant, and the total likely outcome at trial based upon the total of the economic and noneconomic damages submitted to the arbitrator for consideration. A third-party claimant whose claim is resolved by the arbitrator must execute and deliver a general release to the insured party whose claim is resolved by the proceeding.

(7)(4)  Upon adverse adjudication at trial or upon appeal, the authorized insurer shall be liable for damages, together with court costs and reasonable attorney attorney's fees incurred by the plaintiff.

(8)(5)  No Punitive damages may not shall be awarded under this section unless the acts giving rise to the violation occur with such frequency as to indicate a general business practice and these acts are:

(a)  Willful, wanton, and malicious;

(b)  In reckless disregard for the rights of any insured; or

(c)  In reckless disregard for the rights of a beneficiary under a life insurance contract.

Any person who pursues a claim under this subsection shall post in advance the costs of discovery. Such costs shall be awarded to the authorized insurer if no punitive damages are awarded to the plaintiff.

(9)(6)  This section does shall not be construed to authorize a class action suit against an authorized insurer or a civil action against the commission, the office, or the department or any of their employees, or to create a cause of action when an authorized health insurer refuses to pay a claim for reimbursement on the ground that the charge for a service was unreasonably high or that the service provided was not medically necessary.

(10)(7)  In the absence of expressed language to the contrary, this section shall not be construed to authorize a civil action or create a cause of action against an authorized insurer or its employees who, in good faith, release information about an insured or an insurance policy to a law enforcement agency in furtherance of an investigation of a criminal or fraudulent act relating to a motor vehicle theft or a motor vehicle insurance claim.

(11)(8)  The civil remedy specified in this section does not preempt any other remedy or cause of action provided for pursuant to any other statute or pursuant to the common law of this state. Any person may obtain a judgment under either the common-law remedy of bad faith or this statutory remedy, but is shall not be entitled to a judgment under both remedies. This section does shall not be construed to create a common-law cause of action. The damages recoverable pursuant to this section shall include those damages which are a reasonably foreseeable result of a specified violation of this section by the authorized insurer and may include an award or judgment in an amount that exceeds the policy limits.

(12)(9)  A surety issuing a payment or performance bond on the construction or maintenance of a building or roadway project is not an insurer for purposes of subsection (1).

Section 5.    Section 624.1552, Florida Statutes, is created to read:

624.1552   Civil actions involving an insurance contract; applicability of offer of judgment provisions.—The provisions of s. 768.79 apply to any civil action involving an insurance contract.

Section 6.    Section 768.0427, Florida Statutes, is created to read:

768.0427   Admissibility of evidence to prove medical expenses in personal injury or wrongful death actions; disclosure of letters of protection; recovery of past and future medical expenses damages.—

(1)   DEFINITIONS.—As used in this section, the term:

(a)   "Factoring company" means a person who purchases a health care provider's accounts receivable at a discount below the invoice value of such accounts.

(b)   "Health care coverage" means any third-party health care or disability services financing arrangement, including, but not limited to, arrangements with entities certified or authorized under federal law or under the Florida Insurance Code; state or federal health care benefit programs; workers' compensation; and personal injury protection.

(c) "Health care provider" means any of the following professionals and entities, and professionals and entities similarly licensed in another jurisdiction:

1. A provider as defined in s. 408.803.

2. A clinical laboratory providing services in this state or services to health care providers in this state, if the clinical laboratory is certified by the Centers for Medicare and Medicaid Services under the federal Clinical Laboratory Improvement Amendments and the federal rules adopted thereunder.

3. A federally qualified health center as defined in 42 U.S.C. s. 1396d(l)(2)(B), as that definition existed on the effective date of this act.

4. A health care practitioner as defined in s. 456.001.

5. A health care professional licensed under part IV of chapter 468.

6. A home health aide as defined in s. 400.462.

7. A provider licensed under chapter 394 or chapter 397 and its clinical and nonclinical staff providing inpatient or outpatient services.

8. A continuing care facility licensed under chapter 651.

9. A pharmacy permitted under chapter 465.

(d) "Letter of protection" means any arrangement by which a health care provider renders treatment in exchange for a promise of payment for the claimant's medical expenses from any judgment or settlement of a personal injury or wrongful death action. The term includes any such arrangement, regardless of whether referred to as a letter of protection.

(2) ADMISSIBLE EVIDENCE OF MEDICAL TREATMENT OR SERVICE EXPENSES.—Evidence offered to prove the amount of damages for past or future medical treatment or services in a personal injury or wrongful death action is admissible as provided in this subsection.

(a) Evidence offered to prove the amount of damages for past medical treatment or services that have been satisfied is limited to evidence of the amount actually paid, regardless of the source of payment.

(b) Evidence offered to prove the amount necessary to satisfy unpaid charges for incurred medical treatment or services shall include, but is not limited to, evidence as provided in this paragraph.

1. If the claimant has health care coverage other than Medicare or Medicaid, evidence of the amount which such health care coverage is obligated to pay the health care provider to satisfy the charges for the claimant's incurred medical treatment or services, plus the claimant's share of medical expenses under the insurance contract or regulation.

2. If the claimant has health care coverage but obtains treatment under a letter of protection or otherwise does not submit charges for any health care provider's medical treatment or services to health care coverage, evidence of the amount the claimant's health care coverage would pay the health care provider to satisfy the past unpaid medical charges under the insurance contract or regulation, plus the claimant's share of medical expenses under the insurance contract or regulation, had the claimant obtained medical services or treatment pursuant to the health care coverage.

3. If the claimant does not have health care coverage or has health care coverage through Medicare or Medicaid, evidence of 120 percent of the Medicare reimbursement rate in effect on the date of the claimant's incurred medical

treatment or services, or, if there is no applicable Medicare rate for a service, 170 percent of the applicable state Medicaid rate.

4. If the claimant obtains medical treatment or services under a letter of protection and the health care provider subsequently transfers the right to receive payment under the letter of protection to a third party, evidence of the amount the third party paid or agreed to pay the health care provider in exchange for the right to receive payment pursuant to the letter of protection.

5. Any evidence of reasonable amounts billed to the claimant for medically necessary treatment or medically necessary services provided to the claimant.

(c) Evidence offered to prove the amount of damages for any future medical treatment or services the claimant will receive shall include, but is not limited to, evidence as provided in this paragraph.

1. If the claimant has health care coverage other than Medicare or Medicaid, or is eligible for any such health care coverage, evidence of the amount for which the future charges of health care providers could be satisfied if submitted to such health care coverage, plus the claimant's share of medical expenses under the insurance contract or regulation.

2. If the claimant does not have health care coverage or has health care coverage through Medicare or Medicaid, or is eligible for such health care coverage, evidence of 120 percent of the Medicare reimbursement rate in effect at the time of trial for the medical treatment or services the claimant will receive, or, if there is no applicable Medicare rate for a service, 170 percent of the applicable state Medicaid rate.

3. Any evidence of reasonable future amounts to be billed to the claimant for medically necessary treatment or medically necessary services.

(d) This subsection does not impose an affirmative duty upon any party to seek a reduction in billed charges to which the party is not contractually entitled.

(e) Individual contracts between providers and authorized commercial insurers or authorized health maintenance organizations are not subject to discovery or disclosure and are not admissible into evidence.

(3) LETTERS OF PROTECTION; REQUIRED DISCLOSURES.—In a personal injury or wrongful death action, as a condition precedent to asserting any claim for medical expenses for treatment rendered under a letter of protection, the claimant must disclose:

(a) A copy of the letter of protection.

(b) All billings for the claimant's medical expenses, which must be itemized and, to the extent applicable, coded according to:

1. For health care providers billing at the provider level, the American Medical Association's Current Procedural Terminology (CPT), or the Healthcare Common Procedure Coding System (HCPCS), in effect on the date the services were rendered.

2. For health care providers billing at the facility level for expenses incurred in a clinical or outpatient setting, including when billing through an Ambulatory Payment Classification (APC) or Enhanced Ambulatory Patient Grouping (EAPG), the International Classification of Diseases (ICD) diagnosis code and, if applicable, the American Medical Association's Current Procedural Terminology (CPT), in effect on the date the services were rendered.

3. For health care providers billing at the facility level for expenses incurred in an inpatient setting, including when billing through a Diagnosis Related Group (DRG), the International Classification of Diseases (ICD) diagnosis and procedure codes in effect on the date in which the claimant is discharged.

(c)  If the health care provider sells the accounts receivable for the claimant's medical expenses to a factoring company or other third party:

1.  The name of the factoring company or other third party who purchased such accounts.

2.  The dollar amount for which the factoring company or other third party purchased such accounts, including any discount provided below the invoice amount.

(d)  Whether the claimant, at the time medical treatment was rendered, had health care coverage and, if so, the identity of such coverage.

(e)  Whether the claimant was referred for treatment under a letter of protection and, if so, the identity of the person who made the referral. If the referral is made by the claimant's attorney, disclosure of the referral is permitted, and evidence of such referral is admissible notwithstanding s. 90.502. Moreover, in such situation, the financial relationship between a law firm and a medical provider, including the number of referrals, frequency, and financial benefit obtained, is relevant to the issue of the bias of a testifying medical provider.

(4)  DAMAGES RECOVERABLE FOR MEDICAL TREATMENT OR SERVICE EXPENSES.—The damages that may be recovered by a claimant in a personal injury or wrongful death action for the reasonable and necessary cost or value of medical care rendered may not include any amount in excess of the evidence of medical treatment and services expenses admitted pursuant to subsection (2), and also may not exceed the sum of the following:

(a)  Amounts actually paid by or on behalf of the claimant to a health care provider who rendered medical treatment or services;

(b)  Amounts necessary to satisfy charges for medical treatment or services that are due and owing but at the time of trial are not yet satisfied; and

(c)  Amounts necessary to provide for any reasonable and necessary medical treatment or services the claimant will receive in the future.

Section 7.   Section 768.0701, Florida Statutes, is created to read:

768.0701   Premises liability for criminal acts of third parties.—Notwithstanding s. 768.81(4), in an action for damages against the owner, lessor, operator, or manager of commercial or real property brought by a person lawfully on the property who was injured by the criminal act of a third party, the trier of fact must consider the fault of all persons who contributed to the injury.

Section 8.   Section 768.0706, Florida Statutes, is created to read:

768.0706   Multifamily residential property safety and security; presumption against liability.—

(1)  As used in this section, the term:

(a)  "Crime prevention through environmental design" has the same meaning as in s. 163.503(6).

(b)  "Multifamily residential property" means a residential building, or group of residential buildings, such as apartments, townhouses, or condominiums, consisting of at least five dwelling units on a particular parcel.

(c)  "Parcel" means real property for which a distinct parcel identification number is assigned to the property by the property appraiser for the county in which the property is located.

(2) The owner or principal operator of a multifamily residential property which substantially implements the following security measures on that property has a presumption against liability in connection with criminal acts that occur on the premises which are committed by third parties who are not employees or agents of the owner or operator:

(a)1. A security camera system at points of entry and exit which records, and maintains as retrievable for at least 30 days, video footage to assist in offender identification and apprehension.

2. A lighted parking lot illuminated at an intensity of at least an average of 1.8 foot-candles per square foot at 18 inches above the surface from dusk until dawn or controlled by photocell or any similar electronic device that provides light from dusk until dawn.

3. Lighting in walkways, laundry rooms, common areas, and porches. Such lighting must be illuminated from dusk until dawn or controlled by photocell or any similar electronic device that provides light from dusk until dawn.

4. At least a 1-inch deadbolt in each dwelling unit door.

5. A locking device on each window, each exterior sliding door, and any other doors not used for community purposes.

6. Locked gates with key or fob access along pool fence areas.

7. A peephole or door viewer on each dwelling unit door that does not include a window or that does not have a window next to the door.

(b) By January 1, 2025, the owner or principal operator of a multifamily residential property has a crime prevention through environmental design assessment that is no more than 3 years old completed for the property. Such assessment must be performed by a law enforcement agency or a Florida Crime Prevention Through Environmental Design Practitioner designated by the Florida Crime Prevention Training Institute of the Department of Legal Affairs. The owner or principal operator must remain in substantial compliance with the assessment for purposes of this paragraph.

(c)1. By January 1, 2025, the owner or principal operator of a multifamily residential property provides proper crime deterrence and safety training to its current employees. After January 1, 2025, the owner or principal operator must provide such training to an employee within 60 days after his or her hire date for purposes of this paragraph.

2. For purposes of this paragraph, "proper crime deterrence and safety training" means training which trains and familiarizes employees with the security principles, devices, measures, and standards set forth under paragraph (a), and which is reviewed at least every 3 years and updated as necessary. The owner or principal operator may request a law enforcement agency or the Florida Crime Prevention Through Environmental Design Practitioner performing the assessment under paragraph (b) to review the training curriculum.

(3) For purposes of establishing the presumption against liability under subsection (2), the burden of proof is on the owner or principal operator to demonstrate that the owner or principal operator has substantially implemented the security measures specified in subsection (2).

(4) The Florida Crime Prevention Training Institute of the Department of Legal Affairs shall develop a proposed curriculum or best practices for owners or principal operators to implement such training. The state has no liability in connection with providing a proposed training curriculum under this subsection.

(5) This section does not establish a private cause of action.

Section 9.   Subsection (2) of section 768.81, Florida Statutes, is amended, and subsection (6) is added to that section, to read:

768.81   Comparative fault.—

(2)  EFFECT OF CONTRIBUTORY FAULT.—In a negligence action, contributory fault chargeable to the claimant diminishes proportionately the amount awarded as economic and noneconomic damages for an injury attributable to the claimant's contributory fault, but does not bar recovery, subject to subsection (6).

(6)  GREATER PERCENTAGE OF FAULT.—In a negligence action to which this section applies, any party found to be greater than 50 percent at fault for his or her own harm may not recover any damages. This subsection does not apply to an action for damages for personal injury or wrongful death arising out of medical negligence pursuant to chapter 766.

Section 10.   Section 626.9373, Florida Statutes, is repealed.

Section 11.   Section 627.428, Florida Statutes, is repealed.

Section 12.   Subsection (1) of section 627.756, Florida Statutes, is amended to read:

627.756   Bonds for construction contracts; attorney fees in case of suit.—

(1)   In a suit ~~Section 627.428 applies to suits~~ brought by an owner, a contractor, a subcontractor, a laborer, or a materialman ~~owners, contractors, subcontractors, laborers, and materialmen~~ against a surety insurer under payment or performance bonds written by the insurer under the laws of this state to indemnify against pecuniary loss by breach of a building or construction contract, upon the rendition of a judgment or decree by any of the courts of this state against the surety insurer and in favor of the owner, contractor, subcontractor, laborer, or materialman, the trial court or, in the event of an appeal in which the owner, contractor, subcontractor, laborer, or materialman prevails, the appellate court, shall adjudge or decree against the surety insurer and in favor of the owner, contractor, subcontractor, laborer, or materialman a reasonable sum as fees or compensation for the attorney prosecuting the suit in which the recovery is had. ~~Owners, contractors, subcontractors, laborers, and materialmen shall be deemed to be insureds or beneficiaries for the purposes of this section.~~

Section 13.   Paragraphs (a) and (j) of subsection (1) of section 475.01, Florida Statutes, are amended to read:

475.01   Definitions.—

(1)   As used in this part:

(a)   "Broker" means a person who, for another, and for a compensation or valuable consideration directly or indirectly paid or promised, expressly or impliedly, or with an intent to collect or receive a compensation or valuable consideration therefor, appraises, auctions, sells, exchanges, buys, rents, or offers, attempts or agrees to appraise, auction, or negotiate the sale, exchange, purchase, or rental of business enterprises or business opportunities or any real property or any interest in or concerning the same, including mineral rights or leases, or who advertises or holds out to the public by any oral or printed solicitation or representation that she or he is engaged in the business of appraising, auctioning, buying, selling, exchanging, leasing, or renting business enterprises or business opportunities or real property of others or interests therein, including mineral rights, or who takes any part in the procuring of sellers, purchasers, lessors, or lessees of business enterprises or business opportunities or the real property of another, or leases, or interest therein, including mineral rights, or who directs or assists in the procuring of prospects or in the negotiation or closing of any transaction which does, or is calculated to, result in a sale, exchange, or leasing thereof, and who receives, expects, or is promised any compensation or valuable consideration, directly or indirectly therefor; and all persons who advertise rental property information or lists. A broker renders a professional service and is a professional within the meaning of s. 95.11(4)(b) ~~s. 95.11(4)(a)~~. Where the term "appraise" or "appraising" appears in

the definition of the term "broker," it specifically excludes those appraisal services which must be performed only by a state-licensed or state-certified appraiser, and those appraisal services which may be performed by a registered trainee appraiser as defined in part II. The term "broker" also includes any person who is a general partner, officer, or director of a partnership or corporation which acts as a broker. The term "broker" also includes any person or entity who undertakes to list or sell one or more timeshare periods per year in one or more timeshare plans on behalf of any number of persons, except as provided in ss. 475.011 and 721.20.

(j)  "Sales associate" means a person who performs any act specified in the definition of "broker," but who performs such act under the direction, control, or management of another person. A sales associate renders a professional service and is a professional within the meaning of s. 95.11(4)(b) s. 95.11(4)(a).

Section 14.  Paragraph (h) of subsection (1) of section 475.611, Florida Statutes, is amended to read:

475.611  Definitions.—

(1)  As used in this part, the term:

(h)  "Appraiser" means any person who is a registered trainee real estate appraiser, a licensed real estate appraiser, or a certified real estate appraiser. An appraiser renders a professional service and is a professional within the meaning of s. 95.11(4)(b) s. 95.11(4)(a).

Section 15.  Subsection (7) of section 517.191, Florida Statutes, is amended to read:

517.191  Injunction to restrain violations; civil penalties; enforcement by Attorney General.—

(7)  Notwithstanding s. 95.11(4)(f) s. 95.11(4)(e), an enforcement action brought under this section based on a violation of any provision of this chapter or any rule or order issued under this chapter shall be brought within 6 years after the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, but not more than 8 years after the date such violation occurred.

Section 16.  Subsection (4) of section 624.123, Florida Statutes, is amended to read:

624.123  Certain international health insurance policies; exemption from code.—

(4)  Any international health insurance policy or application solicited, provided, entered into, issued, or delivered pursuant to this subsection is exempt from all provisions of the insurance code, except that such policy, contract, or agreement is subject to the provisions of ss. 624.155, 624.316, 624.3161, 626.951, 626.9511, 626.9521, 626.9541, 626.9551, 626.9561, 626.9571, 626.9581, 626.9591, 626.9601, 627.413, 627.4145, 627.428, and 627.6043.

Section 17.  Subsection (4) of section 624.488, Florida Statutes, is amended to read:

624.488  Applicability of related laws.—In addition to other provisions of the code cited in ss. 624.460-624.488:

(4)  Sections 627.291, 627.413, 627.4132, 627.416, 627.418, 627.420, 627.421, 627.425, 627.426, 627.4265, 627.427, 627.428, 627.702, and 627.706; part XI of chapter 627; ss. 627.912, 627.913, and 627.918;

apply to self-insurance funds. Only those sections of the code that are expressly and specifically cited in ss. 624.460-624.489 apply to self-insurance funds.

Section 18.   Paragraph (b) of subsection (3) of section 627.062, Florida Statutes, is amended to read:

627.062   Rate standards.—

(3)

(b)   Individual risk rates and modifications to existing approved forms are not subject to this part or part II, except for paragraph (a) and ss. 627.402, 627.403, 627.4035, 627.404, 627.405, 627.406, 627.407, 627.4085, 627.409, 627.4132, 627.4133, 627.415, 627.416, 627.417, 627.419, 627.425, 627.426, 627.4265, <u>and</u> 627.427, ~~and 627.428,~~ but are subject to all other applicable provisions of this code and rules adopted thereunder.

Section 19.   Subsections (3), (4), and (5) of section 627.401, Florida Statutes, are amended to read:

627.401   Scope of this part.—No provision of this part of this chapter applies to:

(3)   Wet marine and transportation insurance, except ss. 627.409 <u>and</u>, 627.420, ~~and 627.428~~.

(4)   Title insurance, except ss. 627.406, 627.415, 627.416, 627.419, <u>and</u> 627.427, ~~and 627.428~~.

(5)   Credit life or credit disability insurance, except <u>s. 627.419(5)</u> ~~ss. 627.419(5) and 627.428~~.

Section 20.   Subsection (2) of section 627.441, Florida Statutes, is amended to read:

627.441   Commercial general liability policies; coverage to contractors for completed operations.—

(2)   A liability insurer must offer coverage at an appropriate additional premium for liability arising out of current or completed operations under an owner-controlled insurance program for any period beyond the period for which the program provides liability coverage, as specified in s. 255.0517(2)(b). The period of such coverage must be sufficient to protect against liability arising out of an action brought within the time limits provided in <u>s. 95.11(3)(b)</u> ~~s. 95.11(3)(c)~~.

Section 21.   Subsection (8) of section 627.727, Florida Statutes, is amended to read:

627.727   Motor vehicle insurance; uninsured and underinsured vehicle coverage; insolvent insurer protection.—

~~(8)   The provisions of s. 627.428 do not apply to any action brought pursuant to this section against the uninsured motorist insurer unless there is a dispute over whether the policy provides coverage for an uninsured motorist proven to be liable for the accident.~~

Section 22.   Subsection (8) of section 627.736, Florida Statutes, is amended to read:

627.736   Required personal injury protection benefits; exclusions; priority; claims.—

(8)   APPLICABILITY OF PROVISION REGULATING ATTORNEY FEES.—With respect to any dispute under the provisions of ss. 627.730-627.7405 between the insured and the insurer, or between an assignee of an insured's rights and the insurer, the provisions of <u>s. 768.79</u> ~~ss. 627.428 and 768.79~~ apply, except as provided in subsections (10) and (15), and except that any attorney fees recovered must:

(a)   Comply with prevailing professional standards;

(b)   Not overstate or inflate the number of hours reasonably necessary for a case of comparable skill or complexity; and

(c)   Represent legal services that are reasonable and necessary to achieve the result obtained.

Upon request by either party, a judge must make written findings, substantiated by evidence presented at trial or any hearings associated therewith, that any award of attorney fees complies with this subsection. ~~Notwithstanding s. 627.428,~~ Attorney fees recovered under ss. 627.730-627.7405 must be calculated without regard to a contingency risk multiplier.

Section 23.   Subsection (4) of section 628.6016, Florida Statutes, is amended to read:

628.6016   Applicability of related laws.—In addition to other provisions of the code cited in ss. 628.6011-628.6018:

(4)   Sections 627.291, 627.413, 627.4132, 627.416, 627.418, 627.420, 627.421, 627.425, 627.426, 627.4265, 627.427, ~~627.428,~~ 627.702, and 627.706; part XI of chapter 627; ss. 627.912, 627.913, and 627.918; and

apply to assessable mutual insurers; however, ss. 628.255, 628.411, and 628.421 do not apply. No section of the code not expressly and specifically cited in ss. 628.6011-628.6018 applies to assessable mutual insurers. The term "assessable mutual insurer" shall be substituted for the term "commercial self-insurer" as appropriate.

Section 24.   <u>Section 631.70, Florida Statutes, is repealed.</u>

Section 25.   <u>Section 631.926, Florida Statutes, is repealed.</u>

Section 26.   Subsection (11) of section 632.638, Florida Statutes, is amended to read:

632.638   Applicability of other code provisions.—In addition to other provisions contained or referred to in this chapter, the following chapters and provisions of this code apply to fraternal benefit societies, to the extent applicable and not in conflict with the express provisions of this chapter and the reasonable implications thereof:

~~(11)   Section 627.428;~~

Section 27.   <u>The Division of Law Revision is directed to replace the phrase "the effective date of this act" wherever it occurs in this act with the date this act becomes a law.</u>

Section 28.   <u>The amendments made by this act to s. 95.11, Florida Statutes, apply to causes of action accruing after the effective date of this act.</u>

Section 29.   <u>This act shall not be construed to impair any right under an insurance contract in effect on or before the effective date of this act. To the extent that this act affects a right under an insurance contract, this act applies to an insurance contract issued or renewed after the effective date of this act.</u>

Section 30.   <u>Except as otherwise expressly provided in this act, this act shall apply to causes of action filed after the effective date of this act.</u>

Section 31.   This act shall take effect upon becoming a law.

Approved by the Governor March 24, 2023.

Filed in Office Secretary of State March 24, 2023.