**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CRISANTO C. OXONIAN, et al.,**

**Plaintiffs,**

**v.** **Case No: 8:24-cv-01351-MSS-AAS**

**GEICO GENERAL**
**INSURANCE COMPANY,**

**Defendant.**

---

**ORDER**

**THIS CAUSE** comes before the Court for consideration of Defendant GEICO General Insurance Company's Motion for Summary Judgment (the "Motion"), (Dkt. 55), Plaintiffs' response in opposition thereto, (Dkt. 58), Defendant's reply, (Dkt. 59), and the Parties' stipulation of agreed facts. (Dkt. 57) Upon consideration of all relevant filings, case law and being otherwise fully advised, the Court finds the Motion is due to be granted.

## I. Background

### a. Procedural Background

On May 8, 2024, Plaintiffs filed this bad faith action in state court against Defendant. (Dkt. 1-1 (Plaintiffs' Complaint for Third Party Bad Faith)) Defendant removed the action from state court on June 3, 2024. (Dkt. 1) Plaintiffs allege that Defendant acted in bad faith under Florida law in handling of the defense and

settlement of the wrongful death claim arising from the death of Maria I. Oxonian brought in the Circuit Court for the Sixth Judicial Circuit in and for Pinellas County, Florida, by Plaintiff Crisanto C. Oxonian, as personal representative of the Estate of Maria I. Oxonian, deceased, (the "Oxonian Estate"), against Defendant's insureds, including William Gilbert Strickland, (case no. 07-009926-CI (the "State Court Action")), which resulted in an excess final judgment entered against Strickland. (Dkt. 1-1) Plaintiffs allege that Strickland suffered damages in the excess of his policy limits as a result of Defendant's bad faith. (Id.) Defendant moves for summary judgment on Plaintiffs' sole cause of action. (Dkt. 55)

**b. Undisputed Facts**

The following facts are undisputed in this record for the purpose of resolving the Motion. On December 12, 2006, Jessica Wicky was operating her 2003 Hyundai Santa Fe in Pinellas County when she lost consciousness, causing the vehicle to veer left across the grass median and into oncoming traffic. (Dkt. 57 at 1) Wicky's vehicle collided head-on with a vehicle driven by Maria Oxonian, who died as a result of the accident. (Id. at 2) At the time of the accident, Defendant insured Wicky under a liability policy providing bodily injury coverage of $10,000 per person and $20,000 per accident. (Id.) Strickland was also an insured as a co-owner of Wicky's vehicle, though at the time apparently nobody (including Strickland) recognized that he was a co-owner and, thus, an insured. (Id. at 2-3; Dkts. 55 at 3, 12; 58 at 4-5) In October 2007, the Oxonian Estate filed the State Court Action, initially naming Wicky as a defendant and eventually adding Strickland as a defendant. (Dkt. 57 at 7)

In May 2015, Strickland filed for Chapter 13 bankruptcy. (Id. at 9) In July 2015, the Estate moved for relief from the automatic stay issued by the bankruptcy court to proceed to judgment in the State Court Action and bring a civil action against Strickland's insurer, i.e., Defendant. (Id.) The bankruptcy court granted the motion on September 15, 2015, allowing the wrongful death action to proceed against Strickland, with any recovery limited to his insurer. (Id.) An order of discharge was entered in the bankruptcy case in July 2020, and on March 28, 2023, a final excess judgment in the amount of $1,126,228.23 was entered against Strickland in the State Court Action. (Id.) The judgment states "[t]hat the recovery of any damages against William Gilbert Strickland is limited as set forth in the Federal Bankruptcy Court's September 15, 2015 Consent Order granting Limited Relief from Stay and the July 21, 2020 Order of Discharge, Case No. 15-30775. These orders are incorporated by reference and attached as exhibits to this Judgment." (Dkt. 1-1 at 41) Subsequently, Plaintiffs initiated this action. Following entry of judgment on the pleadings in favor of Defendant as to Defendant's alleged bad faith in its handling of Wicky's liability, (Dkts. 38, 47, 48), Defendant moves for summary judgment as to Defendant's alleged bad faith in its handling of Strickland's liability. (Dkt. 55)

## II. Standard of Review

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material

depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356). A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. Porter v. Ray, 461 F.3d 1315, 1320-1321 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value."). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e).

## III. Discussion

"[A] third-party bad faith cause of action arises when the insurer fails to act in good faith in handling a claim brought by a third party against an insured, whereas a first-party bad faith cause of action arises when an insurer fails to act in good faith in the processing of the insured's own first-party claim." Macola v. GEICO, 953 So. 2d 451, 457 (Fla. 2006). "Prior to bringing an action for bad-faith refusal-to-settle an insurance claim against an insurer, Florida law requires that the plaintiff demonstrate that there has been a determination of the insured's damage." Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co., 483 F.3d 1265, 1270 n.3 (11th Cir. 2007) (internal quotation marks omitted).

"[A] bad faith claim under the 'third-party coverage' [can] be maintained either by the 'first party,' i.e., the insured, or by the 'third party,' i.e., the original plaintiff in the tort action." Progressive Exp. Ins. Co. v. Scoma, 975 So. 2d 461, 465-66 (Fla. 2d DCA 2007). The injured third parties' bad faith claim (here, Plaintiffs') is derivative of the insured's bad faith claim (here, Strickland's). See Macola, 953 So. 2d at 454 n.5 ("[Injured third party] Macola's third-party bad faith claim is derivative of [insured] Quigley's claim"); see also Fidelity & Cas. Co. of New York v. Cope, 462 So. 2d 459, 460-61 (Fla. 1985) (judicial recognition of common law bad faith action by injured third party "did not extend the duty of good faith by an insurer to its insured to a duty of an insurer to a third party[;]" instead, it "merely allowed the third party to bring such an action in his own name without an assignment[]" even though the "basis for an action remained the damages of an insured from the bad faith action of the insurer

which caused its insured to suffer a judgment for damages above his policy limits."); McLeod v. Cont'l. Ins. Co., 591 So. 2d 621, 625 n.6 (Fla. 1992) (observing "the requirement that recoverable damages be sustained by the insured as a result of the bad faith of the insurer"), superseded on other grounds by statute, Fla. Stat. § 627.727.

Defendant's Motion raises four arguments in support of entry of judgment in favor of Defendant. First, Defendant renews its contention that it is entitled to judgment by operation of section 624.155(4)(a), Florida Statutes, because Defendant tendered the policy limits. (Dkt. 55 at 10-13) Second, Defendant contends that, independently of section 624.155(4)(a), no jury could find that Defendant engaged in bad faith. (Dkt. 55 at 13-22) Third, Defendant contends that it is entitled to judgment as a matter of law because Plaintiffs have no damages to pursue against Defendant. (Id. at 22-24) Fourth, Defendant contends that it is entitled to judgment as a matter of law with respect to Plaintiffs Crisanto C. Oxonian, Cristian Oxonian, and Kristen Oxonian because they have no independent cause of action against Defendant. (Id. at 24-25)

The Court begins and ends its analysis with Defendant's third contention. Following Strickland's bankruptcy discharge on July 21, 2020, (Dkt. 57 at 9), there is no possibility that Plaintiffs might recover against the insured personally. (Dkt. 57 at 9 (Parties' stipulation that the bankruptcy court "allow[ed] the wrongful death action to proceed against Strickland, *with any recovery limited to his insurer.*") (emphasis added); see also Dkts. 55 at 23-24; 58 at 17-18) As the Undersigned recently stated in a different matter, in Cope and Clement v. Prudential Prop. & Cas. Ins. Co., the "courts

emphasized that it was the insured's lack of damages that extinguished the [bad faith] claim." Humbertson v. Progressive Select Ins. Co., No. 8:23-CV-1709-MSS-AAS, 2026 WL 827182, at *6 (M.D. Fla. Mar. 26, 2026) (citing Cope, 462 So. 2d at 461; Clement, 790 F.2d 1545 (11th Cir. 1986)). Like in Humbertson, the Court's analysis is supported by Eleventh Circuit's discussion in May v. Ill. Nat'l Ins. Co., 190 F.3d 1200 (11th Cir. 1999):

> In May, the plaintiff was an administrator ad litem of a probate estate who brought suit to recover against the decedent's automobile liability insurer for bad faith refusal to settle a claim resulting from an automobile accident in which the decedent was at fault. The injured third party in that case failed to timely file a claim in the probate proceeding. The trial court granted summary judgment in favor of the insurer on the ground that the estate was not liable for the excess judgment because the injured party failed to preserve his claim against the estate. The court explained that "[i]f a deceased insured's estate is not obligated to pay the excess judgment, then no cause of action for bad faith exists." Id. at 1202; see also id. at 1204 (finding [Camp v. St. Paul Fire & Marine Ins. Co., 616 So. 2d 12 (Fla. 1993) ("Camp III")[1]] inapplicable to the facts of the case because "[i]n the instant case, the estate is insulated from liability by operation of law, if the failure to file a claim in the probate estate bars the claim").

Humbertson, 2026 WL 827182, at *6.

Like in May, in this case Camp III is distinguishable. In Camp II, the Eleventh Circuit certified to the Florida Supreme Court the question of whether an insured's discharge from liability prior to exposure to an excess judgment precludes either the injured party's or bankruptcy trustee's subsequent bad faith action. Camp II, 958 F.2d

---

[1] See also Camp v. St. Paul Fire & Marine Ins. Co., 127 B.R. 879 (N.D. Fla. 1991) ("Camp I"); Camp v. St. Paul Fire & Marine Ins. Co., 958 F.2d 340 (11th Cir. 1993) ("Camp II"); Camp v. St. Paul Fire & Marine Ins. Co., 989 F.2d 428 (11th Cir. 1993) ("Camp IV"). The Court incorporates discussion of these cases in Humbertson, 2026 WL 827182, at *4-5.

at 340. In Camp III, the Florida Supreme Court held that even where an insured is discharged in bankruptcy such that he is not personally liable for an excess judgment, "an action for bad faith may be claimed by the trustee of [the insured's] bankruptcy estate against [the insurer]." 616 So. 2d at 15. The Eleventh Circuit stated that the Florida Supreme Court:

> reasoned that the bankruptcy estate held [the insured's] insurance policy as an asset at the time he filed for bankruptcy. Therefore, [the insurer's] duty of good faith extended to the estate which "stood in the shoes of the debtor and, in effect, … became the insured." [Camp III, 616 So. 2d at 15]. The court explained further that the excess judgment against the bankrupt insured harmed the estate by increasing its debt to the detriment of its creditors and concluded that "[the insured's bankruptcy trustee] acted properly in filing a bad faith action to recoup the excess judgment for which the estate remains liable." Id.

Venn v. St. Paul Fire & Marine Ins. Co., 99 F.3d 1058, 1061 (11th Cir. 1996).

With the benefit of the Florida Supreme Court's guidance, the Eleventh Circuit affirmed the district court's dismissal of the injured third party from a third-party bad faith lawsuit that the injured third party and the insured's bankruptcy trustee had brought against the insured's insurer. Camp IV, 989 F.2d at 429. The Eleventh Circuit stated:

> The Florida Supreme Court held [in Camp III] that the bankruptcy trustee . . . can maintain an action against the insurer because the bankruptcy estate "stood in the shoes of the debtor and, in effect, the estate became the insured." **[The insurer's] duty to act in good faith, thus, only ran to the bankruptcy estate, and [an injured third party] may not maintain an action against [the insurer] for bad faith.** In fact, it strains logic to understand why [the injured third party], who received a judgment approximately $2.75 million above the policy limits in her separate medical malpractice action, was damaged by [the insurer's] alleged bad faith refusal to settle within the policy limits in that case.

Id. (emphasis added).

In this case, Camp III is distinguishable because the bankruptcy trustee has not sought an excess judgment against the insured. Instead, the Oxonian Estate prosecuted the State Court Action against Strickland, resulting in an excess judgment of $1,126,228.23 against him. Importantly, however, consistent with the bankruptcy court's order, which was incorporated in the judgment entered in the State Court Action, "any recovery [was] limited to his insurer." (Dkt. 57 at 9) Accordingly, the injured third parties lack standing to maintain a bad faith cause of action against Defendant because they stand in the shoes of the insured, Strickland, in pursuing such a claim. Even assuming that Strickland could have been damaged by entry of an excess judgment as a result of Defendant's bad faith, recoverable damages cannot be sustained by Strickland. (Dkt. 58 at 17-18)

Plaintiffs contend that "the Bankruptcy Court specifically authorized the prosecution of the wrongful death action [in the State Court Action] and, in contemplation of the claims of bad faith, allowed for the Oxonians to recover any damage award from [Strickland's] insurance carrier, [Defendant]. These Orders directly authorize these bad faith claims, and are the functional equivalent of an assignment." (Dkt. 58 at 17-18) Plaintiffs cite no case law in support of their contention, and the Court knows of none. An assignment is a voluntary transfer of rights and interests from the assignor to the assignee. Leesburg Cmty. Cancer Ctr. v. Leesburg Reg'l Med. Ctr., Inc., 972 So. 2d 203, 206 (Fla. 5th DCA 2007); Bioscience W., Inc. v. Gulfstream Prop. & Cas. Ins. Co., 185 So. 3d 638, 641 (Fla. 2d DCA 2016).

No assignment was accomplished by the bankruptcy court's orders allowing the Oxonian Estate to prosecute the State Court Action. If that was the intent of the Order, it had the opposite effect. By limiting the Plaintiffs' right to recovery from the insurer, the bankruptcy court insulated the insured from an excess judgment. As the Eleventh Circuit held in May, if the "insured's estate is not obligated to pay the excess judgment, then no cause of action for bad faith exists." May, 190 F.3d at 1202 (citing Cope, 462 So. 2d at 461).

Plaintiffs further assert that this case is distinguishable from the Camp line of cases, which involved an insured's Chapter 7 bankruptcy, because Strickland filed for Chapter 13 bankruptcy. (Dkt. 58 at 18) Plaintiffs state that in the Chapter 13 bankruptcy case "the bad faith claim was not included in the plan, and therefore did not pass to the bankruptcy trustee and become part of the bankruptcy estate assets. Therefore, the trustee cannot possibly be the sole party with the ability to prosecute the bad faith claims." (Id.) However, even if Plaintiffs are correct that the bad faith claim did not become part of the bankruptcy estate assets, then, as Defendant states, (Dkt. 59 at 9), nobody has standing to assert the bad faith claim. Cf. Camp IV, 989 F.2d at 429; May, 190 F.3d at 1203-04. Plaintiffs state that "*Camp* [*III*] addressed the Trustee's standing and did not hold that the creditors could not also bring the action." (Dkt. 58 at 18 (citing Camp III, 616 So. 2d at 13)) However, Plaintiffs do not explain how they could have standing to pursue the insured's bad faith claim where, as here, the insured is not damaged by the excess judgment. "Because [Strickland] has no longer been damaged by the excess judgment, he has no cause of action against

[Defendant]. If [Strickland] does not, Plaintiffs do not." Humbertson, 2026 WL 827182, at *6.

In short, any third-party bad faith claim against Defendant has been extinguished. Strickland has suffered no damages and is no longer at risk of suffering loss due to an excess judgment. As such, Plaintiffs do not have standing to prevail on a bad faith claim against Defendant derivative of any damage to Strickland caused by Defendant's alleged bad faith. Thus, Defendant is entitled to judgment as a matter of law.

## IV. Conclusion

Upon consideration of the foregoing, it is **ORDERED** that:

1. Defendant GEICO General Insurance Company's Motion for Summary Judgment, (Dkt. 55), is **GRANTED.**
2. The Clerk is **DIRECTED** to enter final judgment in favor of Defendant and against Plaintiffs, terminate any pending motions, and **CLOSE** this case.

**DONE and ORDERED** in Tampa, Florida this 14th day of September 2026.

**Copies furnished to:**
Counsel of Record
Any Unrepresented Party

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE